978 F.2d 1254
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In Re: ALAN GABLE OIL DEVELOPMENT COMPANY, a/k/a Oil
Development Company; In Re: Deep Rock Oil
Company; In Re: Valley View
Exploration, Incorporated,
Debtors. Gregory J.
Schneider,
Appellant,
v.
Ralph W. HOYER, as trustee for Alan Gable Oil Development
Company; Trustee-Appellee,
GASSEARCH CORPORATION, Appellee.
 No. 91-1526.
 United States Court of Appeals,
Fourth Circuit.
 Argued: December 6, 1991
Decided: November 12, 1992
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Parkersburg. Charles H. Haden, II, Chief District Judge. (CA-90-913-A)
 ARGUED: Peggy Eileen Stevens, Sommer & Stevens, P.C., Denver, Colorado, for Appellant.
 Frances Wiley McCoy, Lewis, Ciccarello & Friedberg, Charleston, West Virginia, for Appellees.
 ON BRIEF: Paul M. Friedberg, Lewis, Ciccarello & Friedberg, Charleston, West Virginia, for Appellee GasSearch Corp.; John T. Miesner, Hoyer, Hoyer & Smith, Charleston, West Virginia, for Appellee Hoyer.
 S.D.W.Va.
 Affirmed.
 Before WIDENER and HAMILTON, Circuit Judges, and SHEDD, United States District Judge for the District of South Carolina, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Under the plan of a Chapter 11 bankruptcy proceeding which provides for liquidation of assets, the trustee, appellee Ralph Hoyer, received authorization of the bankruptcy court to sell an asset of the debtor outside the ordinary course of business pursuant to 11 U.S.C. § 363(b). That asset, certain oil and gas interests in land located in West Virginia, was sold to GasSearch Corp. on a cash bid of $350,000. Appellant Gregory J. Schneider moved under Fed. R. Civ. P. 60(b) (see Fed. R. Bankr. P. 9024) to set aside the order authorizing the sale to GasSearch on the grounds that the trustee and bankruptcy court erred in failing to consider his upset bid of $365,000. Schneider alleged that he wrongfully was denied both notice of the trustee's requirement that the full amount of all bids be placed in escrow, and reasonable opportunity to comply with that escrow requirement. The bankruptcy court found that even if there were defects in the way Schneider received notice of the escrow requirement, he had failed to act timely to protect his rights and the rights of GasSearch, who had become a bona fide purchaser of the disputed interests. The court thus declined to undo the completed sale to GasSearch. The district court affirmed the bankruptcy court's denial of that motion, and Schneider now appeals. We affirm, though on slightly different grounds than those relied upon by the district court.
 
 
 2
 The debtor, Alan Gable Oil Development Company, a concern engaged in the exploration and development of oil and gas in Colorado and West Virginia, filed a voluntary petition for Chapter 11 relief on October 17, 1984. Ralph Hoyer was appointed trustee on October 26, 1984. The bankruptcy court confirmed the debtor's amended Chapter 11 plan on September 12, 1989. Though the plan does not appear in the record presented to us, the parties agree that the trustee was authorized to liquidate the assets of the estate under the plan. See 11 U.S.C. § 1123(b)(4).
 
 
 3
 On May 10, 1990, the trustee filed in the bankruptcy court a motion seeking authorization to sell certain West Virginia oil and gas interests and other assets of the debtor to GasSearch for a total cash price of $350,000. GasSearch's offer to purchase those assets, which was appended as an exhibit to the trustee's motion, contained the following term:
 
 
 4
 GasSearch shall, within two business days of the date upon which the Court schedules this offer for hearing, deposit with John S. Bailey, Jr., its attorney, the amount of the purchase price which shall be delivered by him, by bank check, to the Trustee in the event the Court approves GasSearch's offer at Closing. John S. Bailey, Jr. shall, upon receipt of such funds, promptly notify the Trustee to that effect.
 
 
 5
 On May 18, 1990, the clerk mailed notice of the trustee's motion for authorization to the debtor, creditors, and other interested parties. That notice did not explicitly state that upset bids would have to be placed in escrow as was GasSearch's; however, it did state that
 
 
 6
 Unless the Trustee receives a higher and better bid upon the same terms and conditions [as GasSearch's bid] at or before 10:00 a.m. on the 8th of June, 1990, said assets will be sold pursuant to the terms of this notice to[GasSearch] on or after June 15th at 10:00 a.m., 1990[.]
 
 
 7
 (emphasis supplied). The trustee further advised the bankruptcy court in open court that "it was the consensus and the instruction of the creditor committee to proceed only with a sale to a bidder who had made a cash deposit with an escrow agent." These, then, were the apparent sources of the trustee's requirement that all bids be placed in escrow before they would be considered.
 
 
 8
 As early as February and early March of 1990, Schneider had informally expressed interest in purchasing the debtor's West Virginia assets by means of telephone calls to the trustee's office. In response to his inquiries Schneider received two letters from the trustee containing information regarding the assets for sale. Neither letter mentioned specific bidding procedures or the escrow requirement, though the second letter, dated May 9th, which Schneider states he did not receive until after May 29th, stated that a bid had been received on the West Virginia assets and that if Schneider wished to submit a competing bid he should do so immediately. Schneider has stated that he did not receive the trustee's motion for authorization or the notice of the motion until June 11, 1990, when the trustee sent those documents to him by facsimile transmission.
 
 
 9
 Meanwhile, on June 5, 1990, Schneider sent by facsimile a letter to the trustee bidding $365,000 for the West Virginia assets. The trustee's office on that day confirmed that the bid had been received by return telefax, but again no mention was made of the escrow requirement. On June 7, 1990, Schneider was informed by telephone call from the trustee's office that a financial statement evidencing a clear ability to pay the bid amount would be required. On June 8, 1990, one of Schneider's business associates sent by facsimile the requested financial statement to the trustee, and Schneider followed up that telefax with a telephone call to the trustee's office. During that telephone call, according to Schneider, the trustee's associate for the first time informed Schneider of the escrow requirement.[1] At that time Schneider informed the trustee's associate that he would be unable to place $365,000 in escrow on such short notice, and that he would need two or three business days to comply. Between June 8th and June 13th various discussions between the parties ensued as to the escrow requirement, but Schneider apparently never placed the $365,000 in escrow. Finally, by letter dated June 13, 1990, the trustee informed Schneider's counsel of his opinion that Schneider had not satisfied the bidding requirements and that, accordingly, he would recommend to the bankruptcy court that the sale to GasSearch be completed at a hearing before the court that had been scheduled for June 20, 1990.
 
 
 10
 Schneider appeared by counsel at the hearing of June 20th. Schneider's counsel there voiced his oral objection to the sale to GasSearch on the grounds that he had not been given sufficient time to place his bid in escrow and that the trustee generally had dealt with Schneider in an unfair manner. The trustee responded that Schneider had had actual notice of the escrow requirement at least since June 13th, and that his repeated failure to escrow the funds caused the trustee to consider GasSearch's to be the only viable bid on the assets. The bankruptcy court agreed with the trustee and thus overruled Schneider's objection to the sale to GasSearch. The court entered an order approving the sale on June 27, 1990. It found that Schneider had notice of the terms and conditions of the sale by notice sent by the deputy clerk on May 18, 1990.
 
 
 11
 In response, on July 9, 1990, Schneider filed with the bankruptcy court a motion to set aside the order of June 27th pursuant to Fed. R. Civ. P. 60(b) and Fed. R. Bankr. P. 9024. The motion stated essentially the same grounds as those proffered by Schneider at the hearing of June 20th. GasSearch and the trustee opposed the motion and it was set for hearing on September 5, 1990. After hearing argument, the bankruptcy court denied the motion, holding that Schneider had sufficient notice to take action to protect the purchaser but had taken insufficient steps to do so. Even if Schneider may not have received adequate notice of the escrow requirement, he had failed to obtain a stay of the June 27th order authorizing the sale, and thus that the sale could not be upset as against GasSearch, a good faith purchaser of the assets.[2] The district court affirmed this denial on March 19, 1991, principally holding that 11 U.S.C. § 363(m) prevented the court from upsetting the sale to GasSearch. Schneider appealed.
 
 
 12
 At the outset we should say that we do not agree that section 363(m) applies of its own force where a disgruntled bidder or creditor challenges a sale in bankruptcy by means of a motion for collateral relief rather than a direct appeal of the order authorizing the sale. One who seeks to challenge an order authorizing a sale of estate assets may do so in either of two ways. See generally Matter of Met-L-Wood Corp., 861 F.2d 1012 (7th Cir. 1988), cert. denied sub nom. Gekas v. Pipin, 490 U.S. 1006 (1989). First, having objected to the proposed sale, he may choose to appeal from that order to the district court in the usual fashion, i.e., by filing a notice of appeal within ten days of the order as provided in Bankruptcy Rules 8001 and 8002. Alternatively, he may choose to attack the order collaterally, by way of a motion for relief from the order pursuant to Fed. R. Civ. P. 60(b), which is applicable in bankruptcy proceedings by virtue of Bankruptcy Rule 9024. The time period within which such a motion may be made varies with the reason advanced for relief; motions based on mistake or inadvertence of the movant, newly discovered evidence, or fraud of an adverse party must be made within one year of the judgment, while all others must be made "within a reasonable time."
 
 
 13
 When the challenger chooses to proceed by direct appeal, section 363(m) plainly requires that he act to protect good faith purchasers of disputed property by obtaining a stay of the order authorizing the sale pending appeal. See Fed. R. Bankr. P. 8005 (governing stays pending appeal). In imposing such a stay the court may further protect the purchaser of the property by requiring the challenger to post a bond or other security with the bankruptcy court. Failure to obtain a stay, of course, effectively prevents any appellate court from granting relief to the challenger and thus renders the appeal moot. See, e.g., Willemain v. Kivitz, 764 F.2d 1019, 1024 (4th Cir. 1985).
 
 
 14
 However, where an order authorizing a sale is challenged collaterally by motion under Fed. R. Civ. P. 60(b), section 363(m) on its face does not divest the bankruptcy court of the power to upset the sale under proper circumstances. We agree with the recent decision of the Seventh Circuit that section 363(m) does not erect a per se bar to such collateral relief. In re: Edwards, 962 F.2d 641, 643-644 (7th Cir. 1992). The language of section 363(m) suggests that its applicability is limited to appeals from orders authorizing sale. Moreover, to hold otherwise would be to make collateral relief under Rule 60(b) effectively unavailable against an entire category of bankruptcy court orders, a result that could not be reconciled, we think, with Fed. R. Bankr. P. 9024. Thus, that Schneider did not obtain a stay pending appeal does not render this appeal moot. Instead, we must proceed to review the district court's decision denying Rule 60(b) relief.
 
 
 15
 Our decision that section 363(m) does not apply to bar relief to Rule 60(b) movants in no way weakens the protection afforded good faith purchasers in bankruptcy. First, proceeding by a motion for relief from judgment under Rule 60(b) as a practical matter is less attractive than a direct appeal for the simple reason that this court's standard of review is more deferential in collateral proceedings. We review decisions under Rule 60(b) only for abuse of discretion, see Browder v. Director, Dep't of Corrections of Ill., 434 U.S. 257, 263 n.7 (1978), rather than our usual de novo review of legal determinations. Our review is further circumscribed by the fact that an appeal from a denial of Rule 60(b) relief does not bring up for review the underlying determination of the district court; rather, only the decision refusing collateral relief is at issue. See Browder, 434 U.S. at 263 n.7.
 
 
 16
 Further, and just as importantly, though section 363(m) does not in the strictest sense apply to Schneider's Rule 60(b) motion, the policy favoring protection of good faith purchasers of estate property does. Not only does Schneider bear the burden of establishing that the district court abused its discretion, he must do so in light of the strong policy favoring good faith purchasers of bankruptcy assets. "If purchasers at judicially approved sales of property of a bankrupt estate, and their lenders, cannot rely on the deed that they receive at the sale, it will be difficult to liquidate bankrupt estates at positive prices." Edwards, 962 F.2d at 643.
 
 
 17
 On the facts of this case, we are of opinion that the district court did not abuse its discretion in declining to upset the sale to GasSearch. Both the bankruptcy court and the district court found that GasSearch acted in good faith in its purchase of the assets, and indeed that Schneider had never asserted otherwise throughout the proceedings. We find no cause to differ with this holding.[3] Moreover, even if Schneider's relation of the facts is correct, rather than that espoused by the trustee, we note that Schneider admittedly had actual knowledge of the escrow requirement as early as June 8, 1990. We are of opinion that Schneider's failure to escrow his bid, as he was repeatedly asked to do by the trustee prior to the June 20, 1990 hearing on his objection to the sale, further weighs against a finding of abuse of discretion on the part of the district court. Schneider simply has failed to carry his burden of establishing an abuse of discretion in the face of the strong policy in favor of good faith purchasers.
 
 
 18
 Accordingly, the judgment of the district court is
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 The parties dispute whether Schneider indeed did not learn of the escrow requirement until June 8, 1990. The trustee asserts, as he did before the bankruptcy court, that he discussed the escrow requirement with Schneider during telephone conversations occurring several days before Schneider tendered his bid on June 5th. Schneider, on the other hand, insists that he did not receive any notice of the escrow requirement until the oral notice on June 8th and the written notice supplied by his receipt of the trustee's motion for authorization of the sale on June 11th. We are of opinion, as we state more fully below, that the district court did not abuse its discretion in declining to set aside the sale to GasSearch under either the trustee's or Schneider's account of the events prior to June 8th. Thus, we assume for purposes of this appeal that Schneider's account is correct
 
 
 [2]
 The bankruptcy court did not refer to 11 U.S.C. § 363(m) by name, but that provision apparently was a basis for the court's holding, as the opinion of the district court suggests
 
 
 [3]
 We note that in his brief to this court Schneider for the first time argues that GasSearch is not a good faith purchaser of the West Virginia assets. Except in extraordinary circumstances not present here, we do not consider arguments advanced for the first time on appeal. See, e.g., United States v. One 1971 Mercedes Benz, 542 F.2d 912, 915 (4th Cir. 1976)
 In any event, we are of opinion that GasSearch in fact was a good faith purchaser of the assets. Though the bankruptcy code does not define "good faith purchaser," we have adopted the traditional equitable definition of the term: one who purchases the assets for value, in good faith, and without notice of adverse claims. See Willemain, 764 F.2d at 1023. No real issue is presented as to whether GasSearch gave "value"; neither is there any evidence in the record to suggest that GasSearch acted other than in good faith. It appears that GasSearch proceeded in a regular manner throughout the proceedings, and there is no claim of fraud, collusion, or the like. Finally, Schneider argues that GasSearch's knowledge of his competing and disputed bid gave GasSearch notice of an adverse claim. We reject the suggestion that mere knowledge of a competing bid or a disgruntled bidder constitutes "notice of an adverse claim" in this situation; to hold otherwise, we think, would all but eliminate the concept of good faith purchasers in the context of bankruptcy sales.