Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued March 15, 2004        Decided July 16, 2004

No. 03-7074

FRANK SUMMERS, ET AL.,
APPELLEES

v.

HOWARD UNIVERSITY,
APPELLANT

———

Consolidated with
03–7096

———

Appeals from the United States District Court
for the District of Columbia
(No. 98cv02692)

———

*Ronald A. Lindsay* argued the cause for appellant. With him on the briefs was *Peter Chatilovicz*.

——————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Kathleen A. Dolan* argued the cause and filed the brief for appellees.

Before: SENTELLE, ROGERS, and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: This case arises out of a wage dispute between Howard University and its campus security personnel. Current and former Howard security officers filed a complaint in the United States District Court for the District of Columbia alleging that the University had failed to compensate them for work performed during their meal breaks and before and after their scheduled shifts. Howard and the plaintiffs ultimately entered into a settlement agreement, and a magistrate judge issued a consent decree enforcing that agreement.

After entering into the settlement, Howard learned that the plaintiffs had previously filed a complaint in the Superior Court of the District of Columbia arising out of the same facts, and that they had failed to advise Howard of that second suit. Following this discovery, Howard moved to vacate the consent decree and underlying settlement agreement. The magistrate denied Howard's motion and subsequently issued orders adopting the damages and fees calculations made by a special master who had been appointed pursuant to the agreement. The Superior Court complaint was later dismissed.

Howard now appeals from, inter alia, the denial of its motion to vacate and the adoption of the special master's calculations. We conclude that the magistrate judge did not abuse his discretion with respect to the former and that there was no clear error with respect to the latter.

I

The plaintiffs' original district court complaint, filed November 3, 1998, alleged that Howard had failed to pay them for work performed during their meal breaks, in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*, and in breach of the collective bargaining agreement

(CBA) between Howard and the plaintiffs' union. The complaint was amended in May 1999 to add additional claims under the FLSA and the CBA for work performed by the plaintiffs without compensation both before and after their scheduled shifts, and was amended again in May 2001 to add a claim under the D.C. Minimum Wage Act, D.C. Code § 32–1001 *et seq.*, for Howard's failure to compensate the plaintiffs for the same work alleged in the original and amended complaints. Hereinafter, we refer to this amended action as *Summers I*.[1]

In March 1999, Howard submitted the following interrogatory — denominated Interrogatory 14 — to the plaintiffs:

> State whether plaintiffs have ever filed a civil, administrative or other complaint or charge. For each such complaint or charge describe the facts, the date of the complaint or charge, where it was filed, the persons or entities against whom you filed or asserted a claim, and the outcome of the matter.

Def. Howard Univ.'s First Set of Interrogs. to Pls. at 8 (App. 25). Of the 69 plaintiffs who responded, the majority answered that they had not filed any complaints or charges at all; several responded by reporting grievances or court actions unrelated to the instant litigation; a small group referred Howard back to its own records; and a few objected on grounds of relevance and provided no answer. Appellant's Br. at 6; *see also* App. 27–39 (sample responses).

Howard moved to dismiss the complaint or, alternatively, for partial summary judgment. On December 22, 2000, the district judge granted judgment for Howard on the CBA claims, finding that the employees had failed to exhaust grievance and arbitration procedures required by the CBA. *Summers v. Howard Univ.*, No. 98–2692, Mem. Op. & Order at 7 (D.D.C. Dec. 22, 2000) [hereinafter Dec. 2000 Mem. Op.]. At the same time, the court denied the plaintiffs' motion for

---

[1] Our descriptions of the plaintiffs' FLSA claims, as well as of the setoff claimed by Howard and discussed in Part III, are simplified for ease of presentation.

summary judgment on the FLSA claims. *Id.* at 8. In May 2001, the parties consented to refer the case to a magistrate judge for all purposes, pursuant to 28 U.S.C. § 636(c)(1).

On June 14, 2001, the plaintiffs filed a second complaint against Howard for failing to compensate them for work performed during meal breaks and before and after their shifts. Plaintiffs filed this complaint, which we hereinafter refer to as *Summers II*, in the Superior Court of the District of Columbia. The complaint alleged a breach of the CBA, a claim facially identical to one the U.S. District Court had dismissed in December 2000, and also alleged that Howard's failure to compensate the plaintiffs violated the University's employee handbook and thus constituted a breach of contract. The plaintiffs did not serve Howard with this complaint and took steps to ensure that the University would not receive notice of the lawsuit through the usual Superior Court procedures. In addition, the plaintiffs did not supplement their 1999 responses to Interrogatory 14 to account for the filing of *Summers II*.

On December 11, 2001, Howard and the plaintiffs reached a settlement in *Summers I*. Howard agreed to pay the FLSA claims in full, the amount of the payment (including back pay and liquidated damages) to be resolved by a court-appointed special master "pursuant to Rule 53 of the Federal Rules of Civil Procedure." Settlement Agreement at 1 (App. 72). Howard also agreed to pay reasonable attorneys' fees as determined by the special master. The settlement agreement provided that its terms would be embodied in a consent decree and entered by the court. On February 8, 2002, the magistrate judge issued an order ("consent decree") that referenced the terms of the *Summers I* settlement agreement, appointed a special master to make the findings required by that agreement, and directed Howard to pay the special master's fees and costs pursuant to Rule 53(a). *Summers v. Howard Univ.*, No. 98–2692, Order (D.D.C. Feb. 8, 2002).

Two weeks later, Howard moved to vacate the consent decree and the underlying agreement, pursuant to Federal

Rule of Civil Procedure 60(b)(3), for fraud, misrepresentation, and/or misconduct on the part of the plaintiffs in failing to inform Howard of the filing of *Summers II* — which Howard had learned of by happenstance in early January 2002. The magistrate denied the motion, finding that Howard had "failed to meet its burden of proving fraud or misrepresentation on the part of Plaintiffs" and that Howard had suffered no prejudice. *Summers v. Howard Univ.*, No. 98–2692, Mem. Op. & Order at 6 (D.D.C. May 20, 2002) [hereinafter May 2002 Mem. Op.]. Howard filed an interlocutory appeal of the magistrate's denial with this court, which we dismissed for lack of appellate jurisdiction. *Summers v. Howard Univ.*, No. 02–7069, 2003 WL 21186051 (D.C. Cir. May 16, 2003).

Meanwhile, proceedings to enforce the consent decree moved forward. The special master issued his Back Wage Report on January 6, 2003, and his Fees and Costs Report on February 19. On May 7, 2003, after hearing oral argument on Howard's objections to the Back Wage Report, the magistrate adopted that Report and directed Howard to pay back wages and liquidated damages in the amount of $318,080.99. *Summers v. Howard Univ.*, No. 98–2692, Mem. Op. & Order (D.D.C. May 7, 2003) [hereinafter Wage Report Op.]. Thereafter, the magistrate also adopted the special master's Fees and Costs Report, and directed Howard to pay attorneys' fees and costs in the amount of $220,906.00. *Summers v. Howard Univ.*, No. 98–2692, Mem. & Op. (D.D.C. June 16, 2003).

Howard now appeals from the magistrate's order denying the University's motion to vacate the consent decree (and the underlying settlement agreement), as well as from his order adopting the findings of the special master.[2] We address these appeals in Parts II and III below.

[2] In addition, Howard appeals an August 2001 order of the magistrate judge, which denied Howard's motion for partial summary judgment on the plaintiffs' FLSA meal-break claim. *Summers v. Howard Univ.*, No. 98–2692, Mem. Order at 2–3 (D.D.C. Aug. 1, 2001). This is one of the claims that Howard subsequently settled in December 2001 and as to which the magistrate entered the consent decree in February 2002. Because the merits of that

## II

We begin with the magistrate's order denying Howard's motion to vacate the consent decree pursuant to Federal Rule of Civil Procedure 60(b)(3). An appellate court may overturn such an order only for abuse of discretion. *See Computer Prof'ls for Social Responsibility v. United States Secret Serv.*, 72 F.3d 897, 903 (D.C. Cir. 1996); *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988). Rule 60(b)(3) permits a court to relieve a party from a final judgment because of "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." FED. R. CIV. P. 60(b)(3). Howard argues that the plaintiffs' conduct comes within the scope of the rule, and that the magistrate abused his discretion in denying Howard relief.

The magistrate judge denied Howard's motion on the ground that the University had failed to prove either fraud or affirmative misrepresentation. Although Howard disputes that conclusion, it correctly notes that Rule 60(b)(3) provides a third ground for vacatur that the magistrate failed to consider — namely, "other misconduct of an adverse party." *See Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir. 1988) (holding that, for the term "misconduct" to "have meaning in the Rule 60(b)(3) context, it must differ from both 'fraud' and 'misrepresentation'"). And it contends that the plaintiffs' failure to supplement their interrogatory responses to disclose the existence of *Summers II*, coupled with their affirmative efforts to prevent notice of the suit from being given in Superior Court, constituted such misconduct.

---

claim cannot be reexamined unless the consent decree is vacated, and because we decline to vacate that decree for the reasons set forth in Part II, we deny this aspect of Howard's appeal without further discussion. *Cf. Ciralsky v. CIA*, 355 F.3d 661, 673 (D.C. Cir. 2004). Similarly, Howard also appeals the magistrate's order adopting the special master's Fees and Costs Report — not on its merits, but because it is "predicated" on the December 2001 settlement agreement that Howard contends should be vacated. Appellant's Br. at 43–44. Our refusal to vacate that agreement likewise dooms this aspect of Howard's appeal.

We agree. As several circuits have held, "[f]ailure to disclose or produce materials requested in discovery can constitute 'misconduct' within the purview of" Rule 60(b)(3). *Anderson*, 862 F.2d at 923.[3] Plaintiffs' explanation for failing to supplement[4] is that they believed *Summers II* was "not relevant" to *Summers I*. Oral Arg. Tr. at 23 (D.C. Cir. May 8, 2003) (App. 220). At best, however, this would have justified a relevance objection to the interrogatory; it did not justify complete silence.

Moreover, the plaintiffs engaged in repeated, affirmative efforts to keep the filing of *Summers II* a secret from Howard, efforts that included failing to serve the University with the complaint, requesting repeated extensions of time for service while representing that an extension was unopposed, and omitting Howard's name from the list of parties to be served with orders by the court. The plaintiffs concede that these acts were intentional. Their only "excuse" is that they wanted to keep Howard from learning of *Summers II*, so that they could exhaust their administrative remedies before Howard could move to dismiss for failure to exhaust — the strategy the University had used successfully in *Summers I*. Oral Arg. Tr. at 21–22 (D.C. Cir. May 8, 2003); Motions Hr'g Tr. at 11 (D.D.C. Apr. 26, 2002). This, of course, is no excuse at all.

Misconduct alone, however, is not sufficient to justify the setting aside of a final judgment. Under Rule 60(b), a court must balance the interest in justice with the interest in protecting the finality of judgments. *See Schultz*, 24 F.3d at

---

[3] S*ee Cummings v. General Motors Corp.*, 365 F.3d 944, 955 (10th Cir. 2004); *Abrahamsen v. Trans–State Express, Inc.*, 92 F.3d 425, 428 (6th Cir. 1996); *Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir. 1994)*; Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983)*; Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978).

[4] *See* FED. R. CIV. P. 26(e) ("A party who has . . . responded to a request for discovery . . . is under a duty to supplement or correct the . . . response to include information thereafter acquired . . . (2) . . . if the party learns that the response is in some material respect incomplete or incorrect. . . ."); *see also Rozier*, 573 F.2d at 1342 & n.10.

630; *Anderson*, 862 F.2d at 926; *Randall v. Merrill Lynch*, 820 F.2d 1317, 1321 (D.C. Cir. 1987). That balance is effectuated in part by the requirement that the victim of misconduct (or of fraud or misrepresentation) demonstrate actual prejudice. *See Anderson*, 862 F.2d at 924 (holding that, "as with other defects in the course of litigation," misconduct, "to warrant relief, must have been harmful — it must have 'affect[ed] the substantial rights' of the movant" (quoting FED. R. CIV. P. 61)). This is often worded as a requirement that the movant show that the misconduct "foreclosed full and fair preparation or presentation of its case." *Id*. at 923.[5]

Howard contends that the plaintiffs' failure to advise it of the filing of *Summers II* in advance of the settlement prejudiced the University by depriving it of "the benefit of its bargain — resolution of all then-extant claims." Reply Br. at 4. The implication of this contention is that, had Howard known of *Summers II*, it would have insisted that the *Summers I* settlement agreement include a provision resolving *Summers II* as well. Despite this, the magistrate judge concluded that Howard was not prejudiced because, at the time of the settlement, Howard knew that the union had filed an administrative grievance under the CBA that raised issues similar to those in *Summers II*. May 2002 Mem. Op. at 5. Presumably the magistrate's inference is that, armed with knowledge of that grievance, Howard should (or could) have included a global settlement provision resolving all present and future related claims. We share the magistrate's mystification as to why Howard did not insist on such a provision. *See id*. at 5–6. But we agree with the University that, because the CBA grievance differed in certain substantive and remedial respects from the Superior Court lawsuit, knowledge of the former did not necessarily eliminate the potential for prejudice arising from the latter.

---

[5] *See Anderson*, 862 F.2d at 923–24 (collecting cases)*; see also Cummings*, 365 F.3d at 955; *Sellers v. Mineta*, 350 F.3d 706, 715 (8th Cir. 2003); *Tobel v. City of Hammond*, 94 F.3d 360, 362 (7th Cir. 1996); *Schultz*, 24 F.3d at 630; *GAF Corp. v. Transamerica Ins. Co.*, 665 F.2d 364, 371 (D.C. Cir. 1981).

Nonetheless, we conclude that the plaintiffs' failure to inform Howard of the existence of *Summers II* did not result in prejudice to the defendant. Howard concedes that, once it learned of the complaint, it regarded the suit as meritless because the plaintiffs had again failed to exhaust their administrative remedies. Oral Arg. Tape at 9:55 (D.C. Cir. March 15, 2004). The subsequent history of *Summers II* proved Howard right. The University removed the case to federal court, and, with the consent of both parties, the complaint was referred to the same magistrate who was presiding over *Summers I*. Howard then moved to dismiss for failure to exhaust. On June 17, 2003, noting that the plaintiffs had not even filed a response to Howard's motion and that there had been no additional activity in the case, the magistrate dismissed the action. *Summers v. Howard Univ.*, No. 02–239, Order (D.D.C. June 17, 2003). Hence, despite the plaintiffs' failure to advise Howard of the filing of *Summers II*, the University fully achieved its aim of resolving all "then-extant claims."

In its reply brief, Howard insists that it was at least prejudiced by the litigation expenses it incurred in obtaining the dismissal of *Summers II*. We do not doubt that Howard did incur some costs, although the University does not quantify them and the fact that its motion to dismiss was unopposed suggests that the costs could not have been great. But as we pointed out during Howard's last visit to this court, the University had a considerably more direct way of recouping those costs than overturning the settlement: "Any costs and fees incurred because of plaintiffs' alleged misconduct and violation of the discovery rules," we said, "can be redressed through an appropriate motion for sanctions under Federal Rule of Civil Procedure 37(c)(1)." *Summers*, 2003 WL 21186051, at *1. But despite our suggestion, Howard did not request fees or sanctions in its motion to dismiss *Summers II*. And while Howard did request sanctions in its motion to vacate the consent decree, the magistrate expressly deferred consideration of that portion of Howard's motion, May 2002 Mem. Op. at 1 n.1, and Howard failed to pursue the matter further, Oral Arg. Tape at 5:18 (D.C. Cir. Mar. 15, 2004).

Under these circumstances, the Rule 60(b) balance tilts decisively in favor of preserving the finality of the judgment.

We conclude that Howard did not suffer prejudice sufficient to justify vacating the consent decree. Although the magistrate judge reached the same conclusion, because our analysis is not quite the same as his was, we ordinarily would remand rather than affirm in order to give him the opportunity to exercise his discretion in light of the considerations we have outlined. *See United States v. Haynes*, 158 F.3d 1327, 1331–32 (D.C. Cir. 1998). In this case, however, the absence of sufficient prejudice is so plain that a grant of Howard's Rule 60(b)(3) motion would constitute an abuse of discretion. Under such circumstances, a remand would be inappropriate, and we therefore affirm the magistrate's denial of Howard's motion to vacate the judgment. *See Al–Fayed v. CIA*, 254 F.3d 300, 309 n.10 (D.C. Cir. 2001); *Haynes*, 158 F.3d at 1331.

## III

We turn next to Howard's contention that the magistrate judge erred in adopting the special master's Back Wage Report. At the time, the magistrate, sitting by consent as a district court, was under a duty to review the special master's factual findings for clear error. *See* Fed. R. Civ. P. 53(e)(2) (2003); *Wallace v. Skadden, Arps, Slate, Meagher & Flom, LLP*, 362 F.3d 810, 816–17 (D.C. Cir. 2004). We, in turn, also review a special master's findings, to the extent they were adopted by a district court (in this case, by a magistrate judge), for clear error. *Berger v. Iron Workers Reinforced Rodmen, Local 201*, 170 F.3d 1111, 1119 (D.C. Cir. 1999); *see* Fed. R. Civ. P. 52(a).[6] We review conclusions of law de

---

[6] We note that in 2003, Rule 53 was amended to provide de novo review of a special master's factfindings by the district court. *See* Fed. R. Civ. P. 53(g)(3) (2004) & advisory committee's note to 2003 amendments. Those changes did not take effect until December 1, 2003, several months after the magistrate's adoption of the Wage Report. Neither side disputes that the former version of Rule 53 was applicable here, or that the standard for our review is clear error.

novo. *Cuddy v. Carmen*, 762 F.2d 119, 123 (D.C. Cir. 1985).

The special master awarded the plaintiffs $318,080.99 in back wages and liquidated damages. Howard's appeal centers on a provision of the settlement agreement that entitled the University to a setoff for certain premium pay that was paid to plaintiffs for hours they worked in excess of eight in any given day. To determine the amount of the setoff, the special master examined a random sample of 20% of the payroll data for each plaintiff from June 1998 to July 1999. Wage Report Op. at 10. The master found that the setoff applied only rarely, affecting total back pay by at most 1–2%. *Id.* Moreover, the master found that any such setoff was itself generally offset by overtime Howard owed the plaintiffs for weeks in which, although they were scheduled to work 38 or 39 hours, their work before and after scheduled shifts and during meal breaks brought their weekly total to more than 40 hours. *Id.* at 7, 10. Because the result was a "wash," the master concluded that recalculation of the data to include a setoff would not materially affect the result, and hence was unwarranted. *Id.* at 11 (quoting April 1, 2003 Letter from Special Master to Def.'s Counsel).

The magistrate held that the special master's findings were not clearly erroneous, and we agree. Howard argues that, by the terms of the settlement agreement, the special master was obligated to calculate the total amount of the available setoff by examining 100% of the payroll data — rather than by extrapolating from a smaller sample. But there was nothing in the agreement that specified the manner in which the master had to calculate the setoff, and there was nothing unreasonable in his decision to use a random sample of the data to determine whether a setoff would be material. Nor was there anything facially unreasonable about sampling 20% of the data.

Moreover, despite Howard's claim that a review of 100% of the payroll data was required and would yield a materially different result from that produced by the special master's 20% study, Howard never conducted such a review or offered

one into evidence. Although the University had an opportunity to do so between the time the master filed the Back Wage Report on January 6, 2003, and the time the magistrate held a hearing on Howard's objections to the Report on March 20, 2003,[7] it never conducted the full review that it said was required. Instead, the University countered with its own sampling study, examining 100% of the payroll data — but for only 16 out of the total of 71 employees during the June 1998 to July 1999 period.

Howard offers nothing to support the proposition that its sampling methodology was statistically preferable to that used by the special master. Nor was there anything clearly erroneous about the special master's conclusion that any setoff would constitute at most a "de minimus" proportion of the damages award — a result confirmed by Howard's own study, which yielded a total setoff for the 16 employees it examined of only $2306.08. *See* Wage Report Op. at 11–12. In the absence of evidence that a full review would yield a contrary conclusion, we cannot say that the special master's determination of back wages and liquidated damages was clearly erroneous.

## IV

For the foregoing reasons, the orders of the magistrate judge, sitting by consent as a district judge for all purposes, are

*Affirmed.*

---

[7] Indeed, the magistrate found that Howard was on notice that the special master did not intend to include a setoff as early as July 15, 2002, the date the special master asked the parties to comment on his preliminary review of the issue. Wage Report Op. at 14.