# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 18, 2013     Decided February 28, 2014

No. 12-7054

IN THE MATTER OF: HOPE 7 MONROE STREET LIMITED
PARTNERSHIP,

HOPE 7 MONROE STREET LIMITED PARTNERSHIP,
APPELLANT

v.

RIASO, LLC,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-01455)

*Donald M. Temple* argued the cause and filed the briefs for appellant.

*John C. Decker, II* argued the cause and filed the brief for appellee.

Before: HENDERSON and BROWN, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

BROWN, *Circuit Judge*:  Hope 7 Monroe Street Limited Partnership ("Hope 7" or "the partnership") entered

bankruptcy in 2009. RIASO, LLC ("RIASO") was Hope 7's largest creditor. During the course of the bankruptcy proceedings, Hope 7 discovered information suggesting RIASO and its agents had engaged in fraud and breached their fiduciary duty to Hope 7. Notwithstanding those allegations, the bankruptcy court approved the settlement of Hope 7's fraud-based claims against RIASO, approved RIASO's proof of claim against Hope 7, and directed the payment of funds from Hope 7's estate to RIASO. When Hope 7 found additional evidence relevant to RIASO's alleged fraud, it moved pursuant to Federal Rule of Civil Procedure 60(b) for relief from judgment and asked the court to reopen its earlier orders. The bankruptcy court denied Hope 7's Rule 60(b) motion; Hope 7 appealed first to the district court and now to us. After this court requested supplemental briefing on the issue, RIASO argued Hope 7 lacks standing to pursue this appeal. We hold Hope 7 has standing to appeal two of the bankruptcy court's orders, but not a third. On the merits of the remaining portion of the appeal, we affirm the lower courts' decisions not to reopen the judgment.

I

Hope 7 owned apartment units appraised for approximately $3.3 million that it wanted to convert to condominiums. The partnership asked Musse Leakemariam to help it obtain funds for the conversion. Leakemariam arranged for RIASO to lend $1.6 million to Hope 7 to refinance the partnership's mortgage and serve as a bridge loan until a permanent construction loan could be arranged. The permanent financing never materialized, and Hope 7 was unable to repay the bridge loan to RIASO.

After RIASO initiated foreclosure proceedings, Hope 7 filed a voluntary petition for Chapter 11 bankruptcy on April

2, 2009. The bankruptcy court converted the case to a Chapter 7 action and appointed a trustee. During a bankruptcy hearing in August 2009, Hope 7 learned Leakemariam was both the loan broker and the lender. *In re Hope 7 Monroe St. Ltd. P'ship* (*Hope 7*), No. 09-00273, 2011 WL 2619537, at *1, *7 (Bankr. D.D.C. July 1, 2011). Leakemariam had formed RIASO, made up of ten trusts benefitting Leakemariam's family members, about a week before the bridge loan was made. RIASO's only purpose was to make that loan. On November 6, 2009, Hope 7, along with Lenan and Pauline Cappel, its sole limited partners, filed a complaint against Leakemariam, RIASO, and Richard Boddie, RIASO's attorney, in D.C. Superior Court. The plaintiffs alleged, *inter alia*, breach of fiduciary duty, fraud, and misrepresentation.

Meanwhile, RIASO filed a proof of claim in the bankruptcy court claiming Hope 7 owed it about $3 million. Hope 7 objected, arguing, among other grounds, RIASO and Leakemariam had engaged in fraudulent inducement to contract and had breached their fiduciary duty. The bankruptcy court overruled Hope 7's objection and ordered the claim paid from the debtor's estate. The trustee proposed to sell the estate's interest in the Superior Court action to Boddie as a compromise of the claims, and the bankruptcy court approved the sale of the claims to Boddie for $30,000. On November 22, 2010, the court directed final distribution of the estate's funds.

On April 12, 2011, Hope 7 filed a motion pursuant to Federal Rule of Civil Procedure 60(b). *See* FED. R. BANKR. P. 9024 (extending Federal Rule of Civil Procedure 60 to bankruptcy cases). Hope 7 sought to vacate all orders rendered in favor of RIASO, which the bankruptcy court understood to refer to (1) the order approving the motion to

sell Hope 7's legal claims against RIASO, (2) the order overruling the objection to RIASO's proof of claim, and (3) the order directing payment of RIASO's claim from the proceeds of the sale of Hope 7's real property. *Hope 7*, 2011 WL 2619537, at *2. Hope 7 sought relief under Rules 60(b)(2), (3), and (6), claiming new evidence discovered between August and September 2010 demonstrated RIASO was a sham corporation created to conceal Leakemariam's fraud and RIASO's proof of claim was "equally fictitious." J.A. 589–90. Furthermore, the partnership argued RIASO had committed fraud on the court by concealing facts relating to RIASO's sham nature. *See* J.A. 594–96.

The bankruptcy court denied Hope 7's motion for relief from judgment. The court found the new evidence proffered by Hope 7 was not of such a material and controlling nature that it would likely change the outcome of the court's original orders. *Hope 7*, 2011 WL 2619537, at *5–7. Focusing on its order approving the settlement of Hope 7's claims, the bankruptcy court found the new evidence did not push the settlement below the range of reasonableness. *Id.* at *7. Alternatively, the court held the new evidence did not warrant relief pursuant to Rule 60(b)(2) because it could have been discovered by the exercise of due diligence prior to the relevant hearings. *Id.* With regard to Hope 7's Rule 60(b)(3) motion, the bankruptcy court found Hope 7 had not shown RIASO fraudulently obtained approval of the settlement order, and, even if it had, the information RIASO allegedly withheld from the court would not have influenced the court's judgment. *Id.* at *8. Finally, the bankruptcy court held Hope 7 had not demonstrated extraordinary circumstances entitling it to relief pursuant to Rule 60(b)(6); the facts brought forth by Hope 7 did not demonstrate manifest injustice. *Id.* Hope 7 appealed to the district court, which affirmed the bankruptcy

5

court's decision on May 3, 2012.  Hope 7 timely appealed to this court.

II

Before we reach the merits of this case, we dispose of two threshold challenges to our jurisdiction to decide this case.  *See S. Co. Servs., Inc. v. FERC*, 416 F.3d 39, 43 (D.C. Cir. 2005) ("[M]ootness . . . is a threshold jurisdictional issue."); *Steffan v. Perry*, 41 F.3d 677, 697 (D.C. Cir. 1994) (en banc) ("Prudential standing is . . . like Article III standing, a jurisdictional concept.").

A

Prior to oral argument, we ordered supplemental briefing addressing whether Hope 7 has standing.  We have recognized a prudential rule that limits standing to appeal bankruptcy court orders to a "person aggrieved."  *See McGuirl v. White*, 86 F.3d 1232, 1234–35 (D.C. Cir. 1996).  "Persons aggrieved are those whose rights or interests are directly and adversely affected pecuniarily by the order or decree of the bankruptcy court."  *Id.* at 1234.  Debtors generally lack standing because bankruptcy proceedings absolve the debtor of any liability to creditors and the debtor has no interest in the distribution of the estate's property since the property has passed to the trustee.  *Id.*  An order affecting the size of the estate ordinarily would not diminish the debtor's property, increase its liability, or otherwise detrimentally affect its rights.  *In re El San Juan Hotel*, 809 F.2d 151, 154–55 (1st Cir. 1987).  But a debtor has standing to appeal an order where success on appeal could result in a surplus in the estate since any surplus would revest in the debtor when the bankruptcy concludes.  Thus, to establish standing, Hope 7 must show there is a reasonable possibility a

surplus would result if Hope 7 were to succeed on its Rule 60(b) motion and the bankruptcy court reexamined its orders in favor of RIASO.  *See Lunan v. Jones* (*In re Lunan*), 523 F. App'x 339, 340 (6th Cir. 2013) ("The debtor . . . must show that such surplus is a reasonable possibility.").

The trustee's final report lists total claims against the estate of $3,893,529.31.  J.A. 362–63.  RIASO's claims totaled $3,035,699.91, leaving non-RIASO claims of $857,829.40.  J.A. 362–63.  The sale of Hope 7's real property resulted in assets of $3.2 million.  J.A. 358–59.  If Hope 7 succeeds on the merits of this appeal and obtains vacatur of the orders approving RIASO's proof of claim and requiring proceeds be paid to RIASO, the estate would likely realize a surplus.  The estate's assets far exceed the value of non-RIASO claims.

However, the inquiry is not as simple with regard to the bankruptcy court's order approving the settlement of Hope 7's fraud claims against RIASO.  Unfortunately, Hope 7 spent the bulk of its supplemental brief rehashing the merits, and did not at all address whether reopening the bankruptcy court's settlement order would have created a surplus in the estate or whether the reopening of that order need not create a reasonable possibility of surplus because it was appealed with two other orders that put a sufficient amount at stake.  As in other jurisdictional contexts, the party invoking appellate jurisdiction to review a bankruptcy court order has the burden of demonstrating prudential standing.  *See Spenlinhauer v. O'Donnell*, 261 F.3d 113, 118 (1st Cir. 2001).  By not addressing the issue, Hope 7 has completely failed to establish standing to challenge the settlement order.  Nor is the inquiry so clear that we can make a determination on the issue without briefing.  We have not been given a basis from which to determine the measure of damages that Hope 7 might

recover if it were to prevail on its fraud claims. Because Hope 7 has neither argued nor directed the Court to evidence that there is a reasonable possibility that reopening the bankruptcy court's settlement order would result in a surplus in the estate, appellant has failed to meet its burden. *See Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 818–19 (D.C. Cir. 2006) (where court gave parties an opportunity to submit supplemental briefs on the issue of standing, petitioners "failed to meet [their] burden because they neither argued nor directed the Court to evidence" that would establish standing). Therefore, we reach the merits of Hope 7's appeal only insofar as it asks the court to reopen the bankruptcy court's orders allowing RIASO's proof of claim and requiring proceeds be paid to RIASO.

B

RIASO raises another challenge to our jurisdiction, arguing this appeal is moot. Under the bankruptcy code, the sale of property to a good faith purchaser cannot be overturned on appeal unless that sale was stayed pending appeal. 11 U.S.C. § 363(m). We have dismissed as moot appeals where the operation of § 363(m) has left us unable to fashion a remedy to address appellants' asserted injury. *See Allen v. Wells Fargo Bank Minn.*, No. 03-7152, 2004 WL 2538492 (D.C. Cir. Nov. 9, 2004); *Hicks v. Pearlstein* (*In re Magwood*), 785 F.2d 1077, 1080–81 (D.C. Cir. 1986). Hope 7 does not ask us to reopen the sale of its real property.[1] Rather, it asks us to reopen the orders approving RIASO's proof of claim and directing distribution of proceeds to satisfy that claim. Section 363(m) obviously has no application to

---

[1] We need not consider whether § 363(m) would bar reconsideration of the settlement order because we have already determined Hope 7 lacks standing with regard to that order.

the proof of claim order because the approval of a creditor's proof of claim is not a sale of property.

To the extent RIASO argues § 363(m) prevents a court from reversing an order approving the distribution of funds, § 363 does not support such an argument. Section 363 does not grant to a claimant that has received a distribution the same protections it gives to a good faith purchaser of the estate's property. The policy underlying § 363(m) ensures the bankruptcy estate obtains maximum value through its sale of property by providing a bona fide purchaser assurances of finality. *See In re Edwards*, 962 F.2d 641, 645 (7th Cir. 1992). These policies are not implicated by permitting a court of appeals to reopen an order approving the distribution of funds to a creditor. Furthermore, even if § 363(m) did affect an appellate court's review of an order approving the distribution of funds, it would not preclude a collateral attack on that order. *Cf. Schneider v. Hoyer* (*In re Alan Gable Oil Dev. Co.*), No. 91-1526, 1992 WL 329419, at *3–4 (4th Cir. Nov. 12, 1992) ("[W]e do not agree that section 363(m) applies of its own force where a disgruntled bidder or creditor challenges a sale in bankruptcy by means of a motion for collateral relief rather than a direct appeal of the order authorizing the sale."); *In re Edwards*, 962 F.2d at 643–45 ("[S]ection 363(m) merely protects the bona fide purchaser during the period—that is, pending appeal—in which he otherwise would have no protection against the rescission of a judicial order approving the sale, and does not address the scope of collateral relief."). Thus, the bankruptcy code creates no barrier to our review of a proof of claim or distribution order.

9

III

We proceed to examine the merits of Hope 7's appeal as it addresses the bankruptcy court's approval of RIASO's proof of claim and distribution order. "When a court of appeals hears an appeal from an order of a district court that resolved an appeal from an order of the bankruptcy court, the court of appeals sits as a second court of review and applies the same standards as the district court." *Advantage HealthPlan Inc. v. Potter* (*In re Greater Se. Cmty. Hosp. Found., Inc.*), 586 F.3d 1, 4 (D.C. Cir. 2009). We review a bankruptcy court's legal conclusions de novo and its findings of fact for clear error. *McGuirl*, 86 F.3d at 1234. We review the denial of a Rule 60(b) motion for abuse of discretion. *Murray v. Dist. of Columbia*, 52 F.3d 353, 355 (D.C. Cir. 1995). In evaluating a Rule 60(b) motion, a court must balance the "sanctity of final judgments and the incessant command of a court's conscience that justice be done in light of *all* the facts." *Twelve John Does v. Dist. of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988). The bankruptcy judge, "who is in the best position to discern and assess all the facts, is vested with a large measure of discretion in deciding whether to grant a Rule 60(b) motion." *Id.*

A

The bulk of appellant's argument is related to its motion for relief under Rule 60(b)(2). That rule permits a court to "relieve a party . . . from a final judgment, order, or proceeding for . . . newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." FED. R. CIV. P. 60(b). A motion under Rule 60(b)(2) must be made "within a reasonable time" and "no more than a year after the entry of

the judgment or order or the date of the proceeding." FED. R. CIV. P. 60(c)(1).

In its Rule 60(b) motion before the bankruptcy court, Hope 7 asserted it discovered new evidence regarding RIASO's ownership, its financial status, and its lack of a bank account. J.A. 592. The "new evidence" was revealed in the course of discovery in the Superior Court fraud case pursued by the Cappels.[2] Specifically, the evidence was discovered through the use of interrogatories and the deposition of Leakemariam in August and September 2010. J.A. 587–89.

The bankruptcy court held the proffered evidence does not constitute newly discovered evidence under Rule 60(b)(2) because it could have been discovered prior to the relevant hearings through the exercise of reasonable diligence. *Hope 7*, 2011 WL 2619537, at \*7. Appellant acknowledges it was aware of Leakemariam's dual role as broker and lender as early as August 17, 2009. Hope 7 had enough knowledge of the purported fraud or breach of fiduciary duty to lead the Cappels to file a complaint on Hope 7's behalf in D.C. Superior Court on November 6, 2009, and to object to RIASO's proof of claim on February 16, 2010.

Hope 7's timely pursuit of discovery after August 17, 2009 would arguably have uncovered the new evidence prior to the relevant hearing—the bankruptcy court's consideration of Hope 7's objection to RIASO's proof of claim on May 25, 2010. *Cf. Dronsejko v. Thornton*, 632 F.3d 658, 672 (10th Cir. 2011) ("[I]t is [movants'] burden to establish that they

---

[2] Although Hope 7's claims had been settled, the Cappels were able to pursue their claims against RIASO in their individual capacities as junior lienholders of a mortgage on Hope 7's property and guarantors of the RIASO loan.

were entitled to relief under Rule 60(b) . . . .").  Hope 7 argues it could not have sought discovery in the Superior Court action because its claim belonged to the debtor estate, which was controlled by the trustee.  But Hope 7 does not explain why it could not have pursued discovery in the bankruptcy court pursuant to Federal Rule of Bankruptcy Procedure 2004. *See* FED R. BANKR. P. 2004 ("On motion of any party in interest, the court may order the examination of any entity."). Bankruptcy Rule 2004 allows for a broad scope of discovery, permitting "examination of an entity" related to "any matter which may affect the administration of the debtor's estate." FED R. BANKR. P. 2004(b).  Rule 2004 examinations have been characterized as "fishing expeditions" because of the broad scope of inquiry the rule permits. *Buckner v. Okla. Tax Comm'n* (*In re Buckner*), No. EO-00-073, 2001 WL 992063, at *4 (B.A.P. 10th Cir. Aug. 30, 2001).  Bankruptcy courts have permitted Rule 2004 examinations relating to the validity of a proof of claim. *See, e.g.*, *Bank of Am., N.A. v. Lashinsky* (*In re Ahl*), Nos. CV-11-2282-PHX-GMS, 02:11-BK-08539-SSC, 2012 WL 1599834, at *3 n.3 (D. Ariz. May 7, 2012) ("[A] party in interest can move for Rule 2004 discovery from a creditor prior to filing an objection to that creditor's proof of claim."); *In re Albright*, No. 11-20457-WCH, 2013 WL 6076696, at *3–4 (Bankr. D. Mass. Nov. 19, 2013) (court had ordered claimants to appear to be examined by debtor after debtor filed objection to their proofs of claim); *In re DeShetler*, 453 B.R. 295, 306 (Bankr. S.D. Ohio 2011) ("A 2004 examination may be used by the [U.S. trustee] to investigate proofs of claim filed in bankruptcy cases provided that the examination is otherwise appropriate under Rule 2004.").

There is nothing in the record to suggest Hope 7 ever sought discovery, or that relevant evidence could not have been discovered, prior to the bankruptcy court's hearing and

original orders. The bankruptcy court did not abuse its discretion in concluding Hope 7 failed to exercise reasonable diligence to depose Leakemariam or to otherwise discover evidence of the alleged fraud in the nine months between the revelation of Leakemariam's dual role and the pertinent hearing.

B

Hope 7 alternatively seeks relief under Rule 60(b)(3), a provision permitting a court to "relieve a party . . . from a final judgment, order, or proceeding for . . . fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." FED. R. CIV. P. 60(b). A litigant seeking relief under Rule 60(b)(3) must prove the fraud, misrepresentation, or misconduct by clear and convincing evidence. *See Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995). In addition to demonstrating misconduct, the movant must show the misconduct was prejudicial, foreclosing the "full and fair preparation or presentation of its case." *Summers v. Howard Univ.*, 374 F.3d 1188, 1193 (D.C. Cir. 2004); *see also Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983) ("To prevail, the movant must establish that the adverse party engaged in fraud or other misconduct, and that this conduct prevented the moving party from fully and fairly presenting his case."). It is unclear exactly what conduct Hope 7 thinks entitles it to relief under Rule 60(b)(3).

To the extent Hope 7 alleges the new evidence "exposes . . . that the entire loan scheme . . . was designed to fraudulently exploit the Debtor," Appellant's Br. at 45, appellant misunderstands Rule 60(b)(3)'s purpose. Courts have distinguished between "fraud or misstatements that are committed during the course of a commercial transaction

(such as a false statement about the quality of goods being sold), and fraud or misstatements perpetrated in the course of litigation (such as perjury of a witness or the introduction of a false document into evidence)." *Roger Edwards, LLC v. Fiddes & Son Ltd.*, 427 F.3d 129, 134 (1st Cir. 2005). The former type of fraud "is the subject-matter of litigation." *Id.* By contrast, Rule 60(b)(3) is concerned with "fraud perpetrated in the course of litigation." *Id.* Thus, Hope 7 cannot rest a motion for relief under Rule 60(b)(3) on allegations that RIASO or Leakemariam committed fraud or misconduct in making the underlying loan.

If Hope 7 alleges RIASO committed misconduct by failing to disclose information about its ownership, appellant still has not shown entitlement to relief under Rule 60(b)(3). It is true that "failure to disclose or produce materials requested in discovery can constitute 'misconduct' within the purview of Rule 60(b)(3)," *Summers*, 374 F.3d at 1193, but Hope 7 has not demonstrated RIASO had any independent obligation to disclose the information absent a discovery request.

Finally, insofar as Hope 7 argues RIASO committed fraud in the course of litigation by filing a proof of claim when RIASO was a "sham" corporation, Hope 7 has not provided clear and convincing evidence RIASO was indeed a sham corporation not permitted to file a proof of claim. Even if RIASO were a sham corporation, we doubt this would give rise to relief under Rule 60(b)(3). Hope 7 had notice of facts that should have led to discovery of the alleged fraud, and RIASO did not conceal any information it had an obligation to reveal. Hope 7 can hardly argue RIASO's fraud prevented it from fully and fairly presenting its case. Thus, we conclude the bankruptcy court did not abuse its discretion in denying Hope 7's motion for relief under Rule 60(b)(3).

14

C

Finally, appellant seeks relief under Rule 60(b)(6), which permits a court to "relieve a party . . . from a final judgment, order, or proceeding for . . . any other reason that justifies relief." FED. R. CIV. P. 60(b). As appellant concedes, its request for Rule 60(b)(6) relief is premised on nothing more than the arguments supporting relief under Rule 60(b)(2) or (3)—the new evidence and alleged fraud. In *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988), the Supreme Court held "Rule 60(b)(6) . . . grants federal courts broad authority to relieve a party from a final judgment 'upon such terms as are just,' provided that the motion . . . *is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)*." *Id.* at 863 (emphasis added); *see also Salazar*, 633 F.3d at 1120–21. Hope 7 cannot use Rule 60(b)(6) to circumvent the "reasonable diligence" requirement of Rule 60(b)(2) or the various limitations of Rule 60(b)(3). Because appellant's Rule 60(b)(6) argument rests on no independent grounds, the bankruptcy court correctly denied relief under that provision.

\*\*\*

Hope 7 has not demonstrated it has standing to challenge the bankruptcy court's settlement order or, with regard to the remaining claims, that the bankruptcy court abused its discretion in denying the Rule 60(b) motion for relief. The district court did not err in affirming the bankruptcy court's decision. Therefore, the appeal is dismissed in part and the order of the district court is affirmed in part.

*So ordered.*