**In the Matter of Arlo B. EDWARDS, Debtor–Appellee.**

**Appeal of GOLDEN GUERNSEY DAIRY CO–OP, Appellant.**

**No. 91–1577.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1991.

Decided May 4, 1992.

George E. Faber, Rance V. Buehler (argued), Paul R. Bryer, Faber & Buehler, West Dundee, Ill., for Golden Guernsey Dairy Co-op.

Bradley T. Koch (argued), Holmstrom & Kennedy, William E. Schirger, Rockford, Ill., Kim M. Casey, Michael D. Slates, Holmstrom & Kennedy, Rockford, Ill., for Arlo B. Edwards, Stephen J. Noble and Northwest Bank of Rockford.

Before POSNER, COFFEY, and FLAUM, Circuit Judges.

POSNER, Circuit Judge.

The bona fide purchaser at a bankruptcy sale gets good title. That principle, although qualified as we shall see, decides this appeal, in which the specific issue is the validity of a judicially approved sale of a portion of a bankrupt estate without notice to one of the debtor's secured creditors.

Arlo Edwards filed for bankruptcy in 1986 under Chapter 13 of the Bankruptcy Code, which (like its better-known corporate counterpart, Chapter 11) allows the debtor to retain possession of his property, though as the fiduciary of his creditors and subject to the supervision of the bankruptcy court. *In re Lybrook*, 951 F.2d 136 (7th Cir.1991). Stillman Valley National Bank had a first mortgage on several pieces of real estate owned by Edwards. Golden Guernsey Dairy Co–Op—the appellant— had a second mortgage. Both filed proofs of claim in the bankruptcy court. Edwards owed $78,000 on the first mortgage and $19,000 on the second (all dollar figures are rounded off to the nearest thousand). He set about to find a buyer for the real estate, and found him in the person of Stephen Noble, who agreed to buy it for $85,000 free and clear of all liens. Pursuant to 11 U.S.C. § 363, on which see *In re Met–L–Wood Corp.*, 861 F.2d 1012, 1016 (7th Cir.1988), Edwards petitioned the bankruptcy court to confirm the sale. It did so on August 28, 1987, with the proviso that all liens against the property would become liens against the proceeds. The property was conveyed to Noble by warranty deed on November 6, 1987. He recorded it a week later, on the same day that Northwest Bank of Rockford recorded the first mortgage that Noble had given it to secure a loan to enable him to buy the property. The day before the recording, the bankruptcy court had ordered Edwards to disburse $78,000 of the proceeds of the sale to the Stillman bank to discharge the latter's mortgage. Edwards did this, leaving a balance of $7,000 which remained in the bankrupt estate. Shortly afterward, the Chapter 13 proceeding was converted to a Chapter 7 proceeding (liquidation) and a trustee in bankruptcy was appointed.

Guernsey claims not to have learned about the sale of the property on which it had a second mortgage until November 9, 1988, more than a year after the sale, when it received a check from the trustee for $3,000, marked "first and final dividend." In listing his creditors in the original petition for bankruptcy, Edwards apparently had given an old address of Guernsey's lawyer. A clerk of the bankruptcy court had used this list in making up the master schedule of the names and addresses of persons entitled to notice of the various filings in the bankruptcy proceeding. Although the lawyer listed his current address on the proof of bankruptcy claim that he submitted on Guernsey's behalf, the clerk seems not to have noticed that the address was different, and so he did not change it on the master list. As a result, some notices were sent by the bankruptcy court to the old address; and they were not forwarded. The trustee in bankruptcy must have had the right address, however,

because it was to that address that he sent the "first and final dividend."

On February 17, 1989, Guernsey filed a motion in the bankruptcy court to vacate the order of August 28, 1987, confirming the sale of the property to Noble. Noble and the Northwest bank of course opposed. Shortly afterward the trustee asked the court to allow him to pay Guernsey the balance of the proceeds of the sale. Guernsey followed up its motion to vacate with an adversary complaint in the bankruptcy court seeking a determination that its second mortgage had priority over other liens against the property (formerly) secured by its second mortgage. The bankruptcy judge dismissed both the motion and the complaint, and the district judge affirmed.

The adversary complaint could not invoke the jurisdiction of the bankruptcy court. Guernsey was seeking a determination of its right to property that had passed outside that court's control when the property was sold free and clear of all liens. Since the property was no longer part of the bankrupt estate and since a determination of rights to it would not affect any dispute by creditors over property that was part of the bankrupt estate, the bankruptcy court had no jurisdiction to determine rights to the property. *In re Kubly*, 818 F.2d 643 (7th Cir.1987); *In re Xonics*, 813 F.2d 127, 131–32 (7th Cir.1987); *In re Chicago, Rock Island & Pac. R.R.*, 794 F.2d 1182, 1186–87 (7th Cir.1986). It is true that the (former) liens against the property, including Guernsey's, attached to the proceeds of the sale. But the proceeds too had been disbursed—all but the $7,000 that the trustee had, by offering to Guernsey, in effect abandoned.

So Guernsey could get nowhere unless it could persuade the bankruptcy court to vacate the order confirming the sale and by doing so recapture the property for the estate. Such rescissions are of course disfavored. *Id.* at 1186; *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 908 (7th Cir.1990). No one doubts either that Noble was a bona fide purchaser who thought he was getting the property free and clear of all liens or that his financial backer, Northwest Bank of Rockford, was a bona fide creditor that thought it was obtaining a first lien on the property to secure its loan to the purchaser. If purchasers at judicially approved sales of property of a bankrupt estate, and their lenders, cannot rely on the deed that they receive at the sale, it will be difficult to liquidate bankrupt estates at positive prices. *In re Met–L–Wood Corp., supra*, 861 F.2d at 1019; *In re Andy Frain Services, Inc.*, 798 F.2d 1113, 1125 (7th Cir. 1986); *In re Chung King, Inc.*, 753 F.2d 547, 550–52 (7th Cir.1985); *In re CADA Investments, Inc.*, 664 F.2d 1158, 1162 (9th Cir.1981); *In re Bleaufontaine, Inc.*, 634 F.2d 1383, 1389 nn. 10, 12 (5th Cir.1981).

This insight informs the law's treatment of efforts to undo such sales. The law balances the competing interests but weighs the balance heavily in favor of the bona fide purchaser. *In re Chung King, Inc., supra*, 753 F.2d at 550–52. The order confirming the sale to Noble was appealable, and until the time for appeal passed it could have been rescinded by reason of the failure to give the holder of a lien notice, *id.* at 551; *M.R.R. Traders, Inc. v. Cave Atlantique, Inc.*, 788 F.2d 816 (1st Cir. 1986)—provided that the sale had been stayed pending appeal, which it hadn't been. 11 U.S.C. § 363(m). But forget that little detail. After the time for appeal passed, the sale could be challenged, if at all, only in accordance with the provisions of Rule 60(b) of the Federal Rules of Civil Procedure. *In re Met–L–Wood Corp., supra*, 861 F.2d at 1018; *In re Whitney–Forbes, Inc.*, 770 F.2d 692, 696–97 (7th Cir. 1985). Cases that allow rescission, such as *M.R.R. Traders*, do not always mention this deadline—that a motion to rescind the sale is untimely after the judgment in the district court has become final, save as allowed by Rule 60(b). But there is no doubt that it exists, and in *M.R.R. Traders* itself the motion to reconsider was made only days after the sale had been approved. See also *In re CADA Investments, Inc., supra*, 664 F.2d at 1162–63.

*In re Sax*, 796 F.2d 994, 998 (7th Cir. 1986), which refused to reach the merits of

an appeal challenging a bankruptcy sale on jurisdictional grounds because the sale had not been stayed pending the appeal, contains language that could be read to suggest that section 363(m) cuts off all collateral attacks as well as direct attacks on sale orders that are not stayed. The alternative interpretation (and the one we prefer, for reasons to be explained) is that section 363(m) merely protects the bona fide purchaser during the period—that is, pending appeal—in which he otherwise would have no protection against the rescission of a judicial order approving the sale, and does not address the scope of collateral relief. *In re Met–L–Wood, supra*, 861 F.2d at 1018, holds that collateral relief from an order approving a bankruptcy sale is governed by the standards of Rule 60(b) of the civil rules, applied to bankruptcy proceedings by Bankruptcy Rule 9024, and this implies that some of those orders can be set aside after the time for an appeal has run and any stay pending appeal has expired. Rule 60(b), however, is no free-for-all. Quite the contrary. Even if the failure to notify Guernsey had been fraudulent, which is not suggested, the rule would offer Guernsey no succor because a motion to set aside a judgment on grounds of fraud must be filed within one year, Fed.R.Civ.P. 60(b)(3), and this one was not.

 But Guernsey argues that the order is "void," and thus within Rule 60(b)(4), which has no time limit, so we must ask, what does "void" mean? The term is thrown around a lot in law, but it lacks a settled or precise meaning. The standard formulas, such as, a judgment is void "if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law," 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2862, at pp. 198–200 (1973) (footnotes omitted); see also *Pacurar v. Hernly*, 611 F.2d 179, 181 (7th Cir. 1979); *Combs v. Nick Garin Trucking*, 825 F.2d 437, 442 (D.C.Cir.1987), are not helpful. A denial of due process is for the most part treated like any other legal error, and is thus waived if not pressed.

Want of subject-matter jurisdiction is not waivable—until the loser has exhausted his appellate remedies, after which courts will not treat the judgment as void unless the jurisdictional error is egregious, as in *In re Taylor*, 884 F.2d 478, 480–82 (9th Cir.1989), where one bankruptcy judge purported to lift the automatic stay after another had dismissed the bankruptcy proceeding. If it is not egregious, the courts say that the court that issued the judgment in excess of its jurisdiction had jurisdiction to determine jurisdiction, and its jurisdictional finding, even if erroneous, is therefore good against collateral attack, like any other erroneous but final judgment. *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 377, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940); *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 78, 60 S.Ct. 44, 50, 84 L.Ed. 85 (1939); *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *Disher v. Information Resources, Inc.*, 873 F.2d 136, 140 (7th Cir.1989); *Larsen v. Sielaff*, 702 F.2d 116, 118 (7th Cir.1983); *Kock v. Government of Virgin Islands*, 811 F.2d 240, 243 (3d Cir.1987); *Nemaizer v. Baker*, 793 F.2d 58, 64–66 (2d Cir.1986). That is all that *In re Sax* holds: not every jurisdictional defect makes an order approving a bankruptcy sale void, because a court has jurisdiction to determine its own jurisdiction. A rich body of doctrine surrounds collateral attacks on criminal judgments under the habeas corpus jurisdiction—and there the concept of "voidness" as a predicate for such an attack has been abandoned. *Fay v. Noia*, 372 U.S. 391, 423, 83 S.Ct. 822, 840, 9 L.Ed.2d 837 (1963); Paul M. Bator, "Finality in Criminal Law and Federal Habeas Corpus for State Prisoners," 76 *Harv.L.Rev.* 441, 467 n. 55 (1963).

We are left with the practical question, in what circumstances can a civil judgment be set aside without limit of time and without regard to the harm to innocent third parties? *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1447–48 (9th Cir.1985). The answer requires a consideration of competing interests rather than a formula.

To take away a person's property—and a lien is property—without compensation or even notice is pretty shocking, but we have property rights on both sides of the equation here, since Guernsey wants to take away property that Noble bought and Northwest financed, without compensating them for their loss. As we said before, the liquidation of bankrupt estates will be impeded if the bona fide purchaser cannot obtain a good title, and creditors will suffer. The strong policy of finality of bankruptcy sales embodied in section 363(m) provides, in turn, strong support for the principle that a bona fide purchaser at a bankruptcy sale gets good title, *In re Met-L-Wood Corp., supra,* 861 F.2d at 1018; *In re Mann,* 907 F.2d 923, 926 (9th Cir. 1990), even if the section does not of its own force preclude collateral attack on such sales. (And it does not, at least if our reading of *In re Sax* is correct.) Rule 60(b) must be interpreted in light of this policy. The policy would mean rather little if years after the sale a secured creditor could undo it by showing that through some slip-up he hadn't got notice of it.

■ What then are we to make of the statement in Collier's bankruptcy treatise that the purchaser at a bankruptcy sale takes subject to any liens on the property even if the order approving the sale had not been stayed, if the lienholders did not have notice of the sale? 2 *Collier on Bankruptcy* ¶ 363.13, at p. 363–43 (Lawrence P. King 15th ed. 1991). The treatise makes no effort to reconcile this statement with the policy of finality, and its main strut is a decision of the Supreme Court that long antedates section 363(m) and Rule 60(b). *Ray v. Norseworthy,* 90 U.S. (23 Wall.) 128, 23 L.Ed. 116 (1875). *Ray* has not been completely forgotten. Although not cited in *Sax* or *Met-L-Wood,* it was cited, along with Collier's statement, in *In re Fernwood Markets,* 73 B.R. 616, 620 (Bankr.E.D.Pa.1987), for the proposition that, notwithstanding section 363(m), due process entitles a lienholder to notice before his lien is extinguished. That is certainly true in the sense that the Bankruptcy Code would be subject to a serious constitutional attack if it failed to provide for notice to lienholders of a sale intended to convey the bankrupt's property free and clear of liens. But that is not the issue. The issue is what happens when the trustee or debtor in possession fails to make the required notice. That issue is controlled by the policy of finality illustrated by section 363(m) and by the limited scope of Rule 60(b). The doctrine of bona fide purchasers does not violate the due process clause.

We add although unnecessarily that the application of this rule to this case appears to work no great hardship. Guernsey does not suggest that the property was worth more than the $85,000 that the bankrupt estate received for selling it—and if it was worth no more Guernsey suffered only a trivial loss of interest (the interest on $7,000 during the period it was in the hands of the trustee) as a result of the failure to notify it of the sale. Guernsey filed its proof of claim on November 28, 1987, and for two years after that it paid no attention to the bankruptcy proceeding. It could have tried to foreclose its mortgage—a secured creditor can pursue his remedies outside of bankruptcy, and though the automatic stay might thwart him, *In re Vitreous Steel Products Co.,* 911 F.2d 1223, 1231 (7th Cir.1990); *In re Excello Press, Inc.,* 890 F.2d 896, 898 (7th Cir.1989); *In re Met-L-Wood Corp., supra,* 861 F.2d at 1015, he can ask the bankruptcy judge to lift it. Even when Guernsey discovered in November 1988 that the trustee had sold the property without notice to it, it waited three and half months to move to set aside the sale—which was by then eighteen months old. We do not think Guernsey's lawyer (and hence Guernsey) can be faulted for the bankruptcy clerk's action in sending notices to the wrong address; the bankruptcy rules are explicit that notices must be sent to a creditor at the address listed on the proof of claim if that address differs from the one on the list of creditors. Bankruptcy R. 2002(g); *M.R.R. Traders, Inc. v. Cave Atlantique, Inc., supra,* 788 F.2d at 818. But neither do we think that Guernsey has displayed such diligence and zeal in the matter as to cause us to question the benefits of having a strict rule in

favor of the bona fide purchaser at the bankruptcy sale. We need not speculate about what remedies Guernsey might or might not have against Edwards.

AFFIRMED.