**In re PINE COAST ENTERPRISES, LTD., d/b/a Naples Shores Country Club, Debtor.**

**Bankruptcy No. 90 B 21420.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Nov. 6, 1992.

Scott Schreiber, Much Shelist Freed Denenberg & Ament, Chicago, Ill., for debtor.

Malcolm M. Gaynor, Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for Boyne.

Mary Schultz, Chicago, Ill., for McBride Baker & Cole.

## AMENDED MEMORANDUM, OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter comes before the court on the joint motion under Fed.R.Civ.P. 59(a), made applicable to this proceeding by Fed. R.Bankr.P. 9023, of the Debtor, Pine Coast Enterprises, Ltd., and The Resolution Trust Corporation, receiver for the Horizon Savings Bank, for a rehearing in connection with this court's August 19, 1992 order confirming the sale of a golf course and certain Disputed Property (as defined below) to Boyne U.S.A., Inc.[1] For the reasons discussed below, this court grants the Joint Motion for a rehearing, but such a rehearing will be limited to determining whether Boyne acted in good faith in purchasing the Disputed Property.

### FACTS

The Debtor, Pine Coast Enterprises, Ltd., attempted to build and sell a golf course development in Naples, Florida. The Golf Course itself is fully developed. However, the Debtor's attempt to construct a subdivision around the Golf Course was largely unsuccessful. Only a small fraction of the planned homes have been built.

On January 28, 1983, Boyne made a loan to the Debtor secured by a mortgage on the Golf Course. On November 15, 1984, Horizon Federal Savings, the RTC's predecessor-in-interest, made a loan to the Debt-

or. secured by all of the Debtor's assets. On that same day, the Debtor, Boyne and Horizon entered into a subordination agreement. The Subordination Agreement gave Horizon the first priority on all of the Debtor's assets, but made Horizon's first priority subordinate to Boyne's liens.[2] It is the Subordination Agreement that is the source of the instant dispute between Boyne and the RTC. The Subordination Agreement not only subordinated Horizon's lien to Boyne's lien on the Golf Course, it purported to subordinate Horizon's lien to Boyne's lien on another parcel of real estate (the "Disputed Property") on which Boyne *had no lien* by defining the Golf Course as *including the Disputed Property.*

Subsequently, Horizon failed and was taken over by the RTC. On November 16, 1990, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code. At that time, the Debtor's principal assets consisted of the Golf Course, related improvements, the incomplete housing development, and the Disputed Property.

On June 29, 1992, at the joint request of the Debtor and Boyne, the court entered an order under § 363 of the Bankruptcy Code authorizing the sale of the "Golf Course." The court's proposed sale order implicitly adopted the definition of the Golf Course set out in the subordination agreement. That definition, as noted above, included both the Golf Course and the Disputed Property. In the event the sale order became effective, Boyne would be allowed to bid in its lien to pay for the property. Of course, Boyne could only bid in its claim to acquire property against which it had a lien. *See* § 363(k).[3]

---

1. The Joint Motion was captioned as a motion to alter or amend the August Order under Fed. R.Civ.P. 59(e), made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 9023. However, the Joint Motion is in reality a request for a rehearing under Rule 59(a). Thus, the court treats the Joint Motion as a motion under Rule 59(a).

2. The Debtor and RTC contend that part of the development known as "Parcel A" is subject to neither the lien of Boyne nor that of the RTC but is owned by the Debtor free and clear. The

status of Parcel A is not relevant to the instant matter.

3. Section 363(k) provides:

 At a sale under subsection (b) of [§ 363] of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

The court instructed all parties in interest to timely file any objections to the sale. On July 17, 1992, the RTC timely filed its objections to the sale. The RTC asserted that the legal description of the property to be sold pursuant to the order included the Disputed Property, property on which Boyne did not have a lien. When the Debtor's attempt to get a plan confirmed failed, the court overruled the RTC's objections and on August 19, 1992, the court issued an order conveying the Golf Course, including the Disputed Property, to Boyne (the "August Order"). Boyne paid for both the Golf Course and the Disputed Property by bidding in its indebtedness to the Debtor.

On August 31, 1992, the RTC and the Debtor filed a motion for a rehearing in connection with the August Order confirming the sale of the Golf Course and the Disputed Property.[4] The Joint Motion argues that, in the August Order, the court erroneously allowed Boyne to purchase the Disputed Property by bidding in its lien, since Boyne did not have a lien on the Disputed Property, and that, in fact, the Disputed Property should not have been included in the sale at all.

## JURISDICTION AND PROCEDURE

This court has jurisdiction over this matter under 28 U.S.C. § 1334(b) as a matter arising under § 363 of the Bankruptcy Code and Fed.R.Civ.P. 9023. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(K) and (N) as a matter involving the priority and extent of liens and the sale of property. It is before the court pursuant to Local Rule 2.33 of the United States District Court for the Northern District of Illinois referring bankruptcy cases and proceedings to this court for hearing and determination.

## DISCUSSION

 The determination of whether or not to grant a motion for rehearing lies within the discretion of the trial court. *See Blumenfield v. Stuppi*, 921 F.2d 116, 117

(7th Cir.1990). Upon reflection, this court believes it was in error in allowing Boyne to purchase the Disputed Property by bidding in its lien. The August Order was only intended to authorize the sale of property on which Boyne had a lien. At the time of its ruling on the RTC's objection in connection with the sale to Boyne of the Disputed Property, the court believed, based on the subordination documents, that Boyne had a lien on the Disputed Property. The court now believes its initial view was erroneous. A consensual lien comes into existence by agreement. There is no document here in which the Debtor gives Boyne a lien on the Disputed Property. The Subordination Agreement, although recorded with the Collier Country Recorder of Deeds, does not assign any of Horizon's lien rights to Boyne. Therefore, the Court should not have allowed Boyne to bid in its lien to acquire the Disputed Property.

That does not mean, however, that this court should necessarily set aside the sale of the Disputed Property to Boyne. There is a strong policy against the disturbance of orders selling property of the estate under § 363. *Matter of Edwards*, 962 F.2d 641, 643 (7th Cir.1992). This policy is reflected in Fed.R.Bankr.P. 7062, which specifically exempts orders authorizing the sale of property of the debtor's estate under § 363 from the automatic ten day stay normally imposed on the execution of a judgment of a bankruptcy court. Although Fed.R.Civ.P. 62(b), made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7062, allows any party to move for a stay against enforcement of a § 363 order pending the disposition of a motion for rehearing, neither RTC nor the Debtor made a motion to stay the order of sale. Accordingly, Boyne went ahead with the purchase, recording deeds, acquiring title insurance, and so forth, incurring the costs of purchase and maintenance of the Disputed Property.

The Bankruptcy Code itself clearly mandates a policy strongly in favor of the

---

**4.** The Rule 59 motion is timely even though it was filed twelve days after the entry of the sale order. The tenth day, August 29, 1992, was a Saturday. Thus, the last day to seek a rehearing was Monday, August 31, 1992.

finality of judicial sales under § 363 in § 363(m). *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 908 (7th Cir.1990). Section 363(m) provides that the reversal or modification on appeal of an order confirming the sale of property under § 363 does not affect the validity of that sale under such authorization to an entity that purchased the property in good faith.[5]

Boyne claims that modification of the August Order at this late date would be inappropriate. Boyne's argument's is two-pronged. First, Boyne asserts that, although the language of § 363(m) speaks only to modification on appeal, this court is bound by the spirit of § 363(m). Furthermore, Boyne contends that it was a good faith purchaser of the Disputed Property and should be protected by § 363(m).

A. Does the spirit of § 363(m) bind the bankruptcy court?

■■■ This court agrees with Boyne's assertion that the spirit of § 363(m) binds the bankruptcy court. Although § 363(m) technically speaks only of modification of appeal and not of modification on a motion for rehearing, the Seventh Circuit, in *Kham and Nate's Shoes No. 2 v. First Bank*, 908 F.2d 1351, 1355 (7th Cir.1990), stated in dictum that bankruptcy courts are bound by § 363(m)'s bad faith standard because the spirit of § 363(m) governs bankruptcy courts. This court agrees.

The purpose of § 363(m) is to disable courts from backtracking on promises with respect to bankruptcy sales in the absence of bad faith. *Kham and Nate's Shoes No. 2 v. First Bank*, 908 F.2d 1351, 1355 (7th Cir.1990). In this regard, a bankruptcy court's modifications of its own orders poses the same risks as does reversal on appeal. *See id.* Thus, the spirit of § 363(m) mandates a finding of bad faith

before a bankruptcy court may modify a § 363 order.

This conclusion is reinforced by the economic realities of the situation. Good faith buyers of property from a bankruptcy estate must be assured that the sale is final and not subject to being upset by the bankruptcy court or appellate court on a whim. If no such assurances are received, the price the buyer will be willing to pay, and thus, the dividend to the creditors, will be reduced.

B. Did Boyne purchase the Disputed Property in good faith?

In accordance with the spirit of § 363(m), this court should only exercise its discretion to overturn the August Order upon a showing that Boyne's purchase of the Disputed Property was in bad faith.[6] The requirement that a purchaser act in good faith speaks to the integrity of its conduct in the course of the sale proceedings. *Matter of Andy Frain Services, Inc.*, 798 F.2d 1113, 1125 (7th Cir.1986). Fraud by the purchaser would destroy that integrity, and lead to a finding of bad faith. *Id.* at 1125.

In this case, if Boyne knew that it had no lien on the Disputed Property at the time the court entered the August Order, Boyne's conduct was fraudulent and in bad faith. The parties have presented conflicting evidence as to Boyne's knowledge regarding the scope of its lien. Thus, this court is currently unable to determine whether Boyne acted in bad faith in purchasing the Disputed Property.

Consequently, this court grants the Joint Motion for a rehearing. However, such a rehearing is limited to whether Boyne acted in good faith in purchasing the Disputed Property. If the RTC and the Debtor can show that Boyne acted in bad faith in purchasing the Disputed Property, this court will vacate the August Order and order Boyne to return the Disputed Property to

---

5. Section § 363(m) provides:
 The reversal or modification on appeal of an authorization under subsection (b) or (c) of [§ 363] of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

6. § 363(m) only applies when the property transferred by the § 363 order in issue was purchased. Here, Boyne was clearly a purchaser. *See* § 363(k).

**34**

the estate.[7] However, if the movants cannot show Boyne acted in bad faith in purchasing the Disputed Property, this court will not disturb the August Order, despite its view that the August Order was entered in error.

## CONCLUSION

For the foregoing reasons, the court grants the Joint Motion for a rehearing. Such a rehearing will be limited only to whether Boyne acted in good faith in purchasing the Disputed Property.

---

7. As the moving parties, the RTC and the Debtor bear the burden of proof.