In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 18-2117

TRINITY 83 DEVELOPMENT, LLC,

*Plaintiff-Appellant,*

*v.*

COLFIN MIDWEST FUNDING, LLC,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17 C 2844 — **Thomas M. Durkin**, *Judge.*

———————————

ARGUED JANUARY 18, 2019 — DECIDED MARCH 1, 2019

———————————

Before EASTERBROOK, BARRETT, and SCUDDER, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* In 2006 Trinity 83 Development borrowed about $2 million from a bank, giving in return a note and a mortgage on certain real property. In 2011 the bank sold the note and mortgage to ColFin Midwest Funding. ColFin relied on Midland Loan Services to collect the payments. In 2013 Midland recorded a document (captioned "satisfaction") stating that the loan had been paid and

the mortgage released. But the loan was still outstanding, and Trinity continued paying. In 2015 ColFin realized Midland's mistake and recorded a document cancelling the satisfaction. Soon afterward Trinity stopped paying, and ColFin filed a foreclosure action in state court.

Trinity commenced a federal bankruptcy proceeding, which stayed the state-court action. It then filed an adversary action against ColFin, contending that the release extinguished the debt and security interest. Bankruptcy Judge Thorne disagreed, however, holding that the release was a unilateral error that could be rectified unilaterally—and, as no one else had recorded a security interest between those two events, ColFin retained its original rights. A district judge affirmed, and Trinity appealed to us.

Before the appeal was heard, the property was sold under the bankruptcy court's auspices. ColFin contends that this moots the appeal. It relies on 11 U.S.C. §363(m), which reads:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

ColFin also relies on *In re River West Plaza—Chicago, LLC*, 664 F.3d 668 (7th Cir. 2011), which holds that §363(m) blocks not only a request to upset the sale but also any possibility of ordering the recipient of the sale's proceeds to turn that money over to the bankruptcy estate (the relief that Trinity now seeks), which makes an appeal moot.

Mootness is a constitutional doctrine designed to avoid the issuance of advisory opinions. "[A] suit becomes moot, when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. [This occurs] only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal citations and quotation marks omitted). It is possible for a court to grant relief here, as it was possible in *River West*: one side wants money from the other. That request may be inconsistent with a statute, but a defense to payment concerns the merits, not mootness. Courts do not say, when a defendant wins on the law, that the case is moot. Cf. *Bell v. Hood*, 327 U.S. 678 (1946).

Many a statute forecloses particular relief. Think of the Norris-LaGuardia Act, 29 U.S.C. §101, which prohibits the use of injunctions in some labor disputes. When a court concludes that the Act applies, it dismisses the suit but does not declare it moot. See, e.g., *Burlington Northern R.R. v. Brotherhood of Maintenance of Way Employes*, 481 U.S. 429 (1987). The request for an injunction against an ongoing strike presents a real case or controversy within the scope of Article III, a controversy not eliminated by a statute that entitles the defendant to prevail. Just so with §363(m). There is a live controversy about who should get the money generated by the sale. That's why we held long ago that §363(m) does not concern mootness. See *In re UNR Industries, Inc.*, 20 F.3d 766, 769 (7th Cir. 1994). Accord, *In re 203 N. LaSalle Street Partnership*, 126 F.3d 955, 961 (7th Cir. 1997), *reversed on the merits*, 526 U.S. 434 (1999). A defense, even an ironclad defense, does not defeat jurisdiction, see, e.g., *Builders Bank v. FDIC*, 846 F.3d 272 (7th Cir. 2017), and mootness is a jurisdictional doctrine. The opinion in *River West* does not cite *UNR* or *LaSalle Street*

*Partnership* and so created an unappreciated intra-circuit conflict.

There is a further problem with *River West*—one independent of the question whether §363(m) concerns mootness. Section 363(m) does not say one word about the disposition of the proceeds of a sale or lease. The text is straightforward: "The reversal or modification on appeal of an authorization … of a sale or lease of property does not affect the validity of a sale or lease … to an entity that purchased or leased such property in good faith". What should be done with the proceeds is a subject within the control of the bankruptcy court. We have recognized this multiple times. See, e.g., *In re Lloyd*, 37 F.3d 271, 273 (7th Cir. 1994); *In re Edwards*, 962 F.2d 641, 643–44 (7th Cir. 1992). Many decisions from outside this circuit after *River West* likewise hold that §363(m) does not specify what happens to the money. E.g., *In re Hope 7 Monroe Street L.P.*, 743 F.3d 867, 872–73 (D.C. Cir. 2014); *In re ICL Holding Co.*, 802 F.3d 547, 554 (3d Cir. 2015); *In re Brown*, 851 F.3d 619, 623 (6th Cir. 2017). *River West* conflicts with *Lloyd* and *Edwards*, and the panel did not appreciate that it was creating a second intra-circuit conflict.

*River West* relied on *In re Sax*, 796 F.2d 994 (7th Cir. 1986), which held an appeal to be moot when the appellant sought to undo a sale that came within the scope of §363(m). *Sax* arose from a challenge to the sale itself, not a dispute about who was entitled to the proceeds. It therefore does not support the conclusion of *River West* that §363(m) prevents any judicial order requiring proceeds to be handed over to a trustee or estate in bankruptcy. *In re Edwards*, 962 F.2d at 644, observed that it would be mistaken to read *Sax* as limiting judicial control over the disposition of the money generated

by a sale—yet that is what *River West* did, citing *Sax* but not *Edwards*.

The disagreement among panels must be cleared up. We now hold that §363(m) does not make any dispute moot or prevent a bankruptcy court from deciding what shall be done with the proceeds of a sale or lease. *River West* is over-ruled, as is Part III of *Sax* (which treated as moot all disputes within the scope of §363(m)). Any other decision in this circuit that treats §363(m) as making a controversy moot, rather than giving the purchaser or lessee a defense to a request to upset the sale or lease, is disapproved. This opinion has been circulated before release to all active judges. See Circuit Rule 40(e). None wanted to hear the appeal en banc.

This brings us to the merits. Trinity maintains that the re-lease erroneously filed in 2013 abrogated ColFin's rights. If that's so, then the proceeds from the sale must be distributed among Trinity's other creditors. The bankruptcy judge and district judge concluded, however, that Trinity did not ob-tain rights from the 2013 filing, for it was unilateral and without consideration. It therefore was not a contract, and because no one (including Trinity) detrimentally relied on the release, ColFin could rescind it.

That conclusion is sound as a matter of Illinois law, which applies to ColFin's security interest. Illinois treats a mistaken release of a mortgage as ineffective between the mortgagor and mortgagee, see *Hale v. Morgan*, 68 Ill. 244 (1873); *Ogle v. Turpin*, 102 Ill. 148 (1881); *Lennartz v. Quilty*, 191 Ill. 174, 179–80 (1901), although third parties that rely on the mistake may obtain security given the apparent lack of a senior security interest. *Bank of New York v. Langman*, 2013 IL App (2d) 120609 ¶21.

Trinity relies on this clause in the mortgage: "Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender." Trinity treats this as if it read: "Lender shall be deemed to have irrevocably waived any rights under this mortgage whenever it or its agent signs a written document to that effect." But that's not what the clause provides. It says that *only* an authorized writing accomplishes a waiver, not that any particular document does so. To say "*only* A can accomplish B" is not at all to say "*every* A accomplishes B." The no-waiver clause negates oral waivers and waivers implied from conduct; accepting a late payment thus does not waive the deadline for payments. This language does not mean that mistaken unilateral writings are beyond recall.

According to Trinity, *In re Motors Liquidation Co.*, 777 F.3d 100 (2d Cir. 2015), shows that a mistaken release cannot be undone. That may be true if, as in *Motors Liquidation*, the error comes to light only after bankruptcy. The Bankruptcy Code gives the Trustee or debtor in possession the rights of a hypothetical lien creditor. 11 U.S.C. §544(a)(1). Because a mistaken release in Illinois allows third parties to take effective security interests if they act before the release is rescinded, a mistake not caught before the date of the bankruptcy filing brings §544(a)(1) into play and prevents the secured creditor from regaining its original position. That's what happened in the Second Circuit's case, leaving the secured creditors to argue that the release (which all conceded to be mistaken) should be disregarded because it had been unauthorized. The Second Circuit concluded that the release had been authorized, so it counted—and §544(a)(1) did the remaining work. But ColFin caught the problem before Trinity filed its bankruptcy petition, so a hypothetical lien perfected

on the date of the bankruptcy would have been junior to ColFin's interest.

AFFIRMED