# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
January 13, 2022

Lyle W. Cayce
Clerk

No. 21-20147

C Whale Corporation

*Debtor*,

Hsin Chi Su, also known as Nobu Su, also known as
Nobuyoshi Morimoto,

*Appellant*,

*versus*

C Whale Corporation,

*Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-1799

Before Stewart, Haynes, and Graves, *Circuit Judges*.

Per Curiam:*

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-20147

Hsin Chi Su ("Su") appeals the bankruptcy court's order approving the sale of the C Whale, a vessel that allegedly contained Su's patented technology. Su asserts that the bankruptcy court lacked jurisdiction to order the sale of the C Whale free and clear of his purported patent rights. Su further asserts that the purchaser of the C Whale, Pacific Orca Holdings, LLC ("Pacific Orca"), acted in bad faith. The district court affirmed the bankruptcy court's Sale Order and held that Su's appeal was moot, finding there was no evidence of bad faith by Pacific Orca. The district court was correct, so we AFFIRM.

**I.**

Appellant Su is the former owner, president, and director of Appellee C Whale Corporation ("C Whale Corp.").  Around March 2007, C Whale Corp. entered into a loan agreement with Mega International Commercial Bank Co., Ltd. ("Mega Bank") and a syndicate of lenders ("Lenders") as part of a larger contract in which Su agreed to build a fleet of cargo vessel carriers. These cargo carriers used technology known as "under-deck piping" which allowed them to alternate carrying ore and oil. Su personally guaranteed the loan with Mega Bank.

Su's contracted cargo carriers failed to generate sufficient revenue. Those carriers included the C Whale, a  vessel built by C Whale Corp. with funds obtained from Mega Bank and the Lenders. So, in June 2013, Su filed multiple petitions for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas ("bankruptcy court"). The bankruptcy court authorized the C Whale's return to service to generate revenue, but the vessel was unable to acquire enough charters to support its operations and pay its debts.

No. 21-20147

## A.    Sale of the C Whale

Mega Bank filed a motion for relief from the automatic bankruptcy stay so it could sell the C Whale pursuant to the loan agreement. On March 28, 2014, the bankruptcy court authorized Mega Bank to sell the C Whale on behalf of the Lenders ("the Sale Order"). The Sale Order authorized the Lenders to submit a credit bid if no other party offered a cash bid that exceeded the existing debt.

C Whale Corp. retained H. Clarkson & Co. Ltd. ("H. Clarkson") to market the ship and serve as the broker of the sale. H. Clarkson advertised the C Whale via email and in trade journals. H. Clarkson received and responded to numerous inquiries, including twenty requests for further information and eight requests for inspection.

Approximately one week into the sale process, Su informed the Lenders that he had applied for patents in Japan, Korea, and China for his design of the under-deck piping. Regardless of any patent protections, Su has acknowledged that C Whale Corp. had the right to use the under-deck piping "for free" and without royalty payments or licensing fees.  No loan documents or other written or oral agreements between the parties discuss patents: Su admits that "[n]one of the loan documents contain a single word about patents, intellectual property, or related licenses."

 During the sale process, Su resigned as president and manager of C Whale Corp. The bankruptcy court appointed Esben Christensen to oversee the sale process and run C Whale Corp.'s operations. Neither Su nor any other party contested this appointment.

H. Clarkson received four cash bids for the C Whale, and after several rounds of bidding, H. Clarkson and C Whale Corp. determined that the highest purchase offer was $58.2 million. The purchase offer ($58.2 million)

was less than the vessel's debt ($64.8 million) which then allowed the Lenders to submit a credit bid pursuant to the Sale Order.

The Lenders submitted a credit bid for $58.45 million. C Whale Corp.'s debt was owned entirely by OCM Formosa Strait Holdings, an affiliate of Oaktree Capital Management L.P. (collectively, "Oaktree"). In the credit bid, Oaktree designated Pacific Orca Holdings, LLC ("Pacific Orca"), a single-purpose entity affiliated with Oaktree, to take title of the C Whale at closing.

After bidding closed, two other entities submitted late bids but neither resulted in a qualified bid under the Sale Order. Regardless, C Whale Corp., Mega Bank, Oaktree, and Su agreed to reopen and extend the bidding process for fourteen (14) days to solicit higher bids—including from the two late bidders—but no additional bids were made during this time.

### B.    Bankruptcy Court Approves the Sale

On June 12, 2014, about a month after Su resigned from his role with C Whale Corp., Su filed objections to the sale of the vessel, asserting that it could not be sold free and clear of his patents and related rights. Su asserted that C Whale Corp. and Pacific Orca acted in bad faith and conspired to obtain the C Whale at a lower price. At the sale hearing, however, Su withdrew his objections and consented to the sale with the understanding that he could assert any viable patent rights against the Lenders in subsequent proceedings. The bankruptcy court included explicit language indicating that "the Vessel [was] sold free and clear of all Alleged Su IP Claims." The bankruptcy court approved the sale of the C Whale free and clear from all claims and interests, including the patent claims.

After the sale was finalized, the bankruptcy court conducted a three-day evidentiary hearing and made specific findings that Pacific Orca was a

good-faith purchaser.  The bankruptcy court noted that there was not even a "scintilla of evidence" suggesting collusion or bad faith as Su had asserted.

### C.    District Court Affirms

Su appealed the sale of the C Whale and the good faith determination. Specifically, he argued that the bankruptcy court lacked jurisdiction to sell the C Whale free and clear of his patent rights because there was no bona fide dispute as to the validity of the patent which would have conferred jurisdiction. The district court did not address the bona fide dispute argument. Instead, it determined the sale was a core bankruptcy proceeding that conferred jurisdiction. And, the court held that in any event, the appeal was moot under Section 363(m) of the Bankruptcy Code because Su had neither obtained a stay of the sale of the C Whale nor shown that the bankruptcy court clearly erred in determining that Pacific Orca did not act in bad faith. The district court independently reviewed the record and found that "[n]o evidence exists of bad faith in the bidding and sale."  This appeal followed.

### II.

Because this court is a "second review court," we apply "the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *In re Linn Energy, L.L.C.*, 927 F.3d 862, 866 (5th Cir. 2019). In short, we review the bankruptcy court's conclusions of law de novo, and factual findings are reversed only if clearly erroneous. *Id.*

### III.

C Whale Corp. asserts that there is no evidence of bad faith and, because Su failed to request a stay of the sale of the C Whale, this court lacks jurisdiction over this appeal. Section 363(m) of the Bankruptcy Code states:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

"Section 363(m) patently protects, from later modification on appeal, an authorized sale where the purchaser acted in good faith and the sale was not stayed pending appeal." *In re Gilchrist*, 891 F.2d 559, 560 (5th Cir. 1990). In the absence of a stay, this court has interpreted Section 363 to moot an appeal, unless the purchaser did not act in good faith. *See Bleaufontaine, Inc. v. Roland Int'l* (*In re Bleaufontaine, Inc.*), 634 F.2d 1383, 1389–90 (5th Cir. 1981).

It is undisputed that the C Whale was sold pursuant to Section 363(m) and that Su did not seek or obtain a stay of the Sale Order. Thus, unless the district court clearly erred in determining that Pacific Orca acted in good faith as the purchaser, this appeal is moot.

Although the Bankruptcy Code does not explicitly define "good faith," the Fifth Circuit has defined it in the context of § 363(m) in two ways. A "good faith purchaser" is "one who purchases the assets for value, in good faith, and without notice of adverse claims." *In re TMT Procurement Corp.*, 764 F.3d 512, 521 (5th Cir. 2014) (citing *Hardage v. Herring Nat'l Bank*, 837 F.2d 1319, 1323 (5th Cir. 1988)). Conduct that would destroy good faith includes "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of the other bidders." *In re TMT Procurement Corp.*, 764 F.3d at 521 (5th Cir. 2014) (citing *In re Bleaufontaine, Inc.*, 634 F.2d at 1388 n. 7 (5th Cir. 1981)).

No. 21-20147

On appeal, Su asserts that Pacific Orca acted in bad faith because "a purchaser who credit bids when it has no lien on the property acts in bad faith as a matter of law." This argument is somewhat unclear, but it seems that Su takes issue with the fact that Mega Bank held the debt against the C Whale but failed to properly transfer the debt to Pacific Orca pursuant to Bankruptcy Rule 3001(e) such that Pacific Orca could then submit a credit bid.

Su did not make this specific argument before the bankruptcy court, instead raising it for the first time on appeal to the district court. As such, we need not consider it. *See In re Gilchrist*, 891 F.2d at 561 ("It is well established that we do not consider arguments or claims not presented to the bankruptcy court."). Even assuming this argument was preserved under the larger umbrella of the good faith determination, Su fails to establish how a violation of Rule 3001(e)(2) evinces bad faith.

Bankruptcy Rule 3001(e)(2) states that "[i]f a claim other than one based on a publicly traded note, bond, or debenture has been transferred other than for security after the proof of claim has been filed, evidence of the transfer shall be filed by the transferee." Fed. R. Bankr. P. 3001(e)(2).

*In re Pine Coast Enterprises, Ltd.*—the only case Su asserts to support his argument—does not address Rule 3001 nor does it stand for the proposition Su represents to the court. *See generally* 147 B.R. 30 (Bankr. N.D. Ill. 1992). Instead, the court in *In re Pine Coast Enterprises* narrowly stated that "[i]n this case, *if [the purchaser] knew* that it had no lien on the Disputed Property at the time the court entered the [Sale] Order, [the purchaser's] conduct was fraudulent and in bad faith." 147 B.R. 30, 33 (Bankr. N.D. Ill. 1992) (emphasis added). However, the court noted that because the parties presented competing evidence as to the purchaser's knowledge about its lien, rehearing was warranted. *Id.*

No. 21-20147

In contrast here, the bankruptcy court held a three-day hearing to assess whether Pacific Orca acted in good faith and it determined that there was not a "scintilla of evidence" suggesting bad faith. The district court likewise found "[n]o evidence exists of bad faith in the bidding and sale." Su has provided no evidence beyond mere speculation that either Mega Bank or Pacific Orca violated Bankruptcy Rule 3001(e)(2).

Su has likewise failed to provide any case law or other authority, including the Bankruptcy Code, that suggest a violation of Rule 3001(e)(2) demonstrates bad faith. Even *assuming arguendo* that a violation of Rule 3001(e)(2) evinced bad faith, Su has presented no evidence that Pacific Orca knew it had no lien when it credit bid on the C Whale. *See In re Pine Coast Enterprises, Ltd.*, 147 B.R. 33 (requiring actual knowledge to show bad faith). Su's vague assertions and shaky legal premises, including his sole reliance on a factually distinguishable, out-of-circuit bankruptcy case, do not show Pacific Orca acted in bad faith.

Further, the record provides ample evidence showing good faith in the sale process. The C Whale was sold via a broker who fielded multiple inquiries and offers and conducted a thorough advertising campaign. Nothing indicates the parties conspired to obtain a lower purchase price, as Su asserts. Even when Mega Bank and the Lenders could have successfully purchased the ship through the credit bid process, the parties—including Su—agreed to reopen the bidding process to solicit higher offers. The record is absent of any indication of bad faith.

Because Su has failed to show that there is any evidence of bad faith in the sale of the C Whale or that the bankruptcy court clearly erred when it found that Pacific Orca was a good faith purchaser, his appeal is moot.

No. 21-20147

## IV.

We lack jurisdiction over this appeal, so we need not reach the merits of Su's argument that the bankruptcy court lacked jurisdiction to enter the Sale Order free and clear of his alleged patent rights. The Fifth Circuit has held that we "cannot reach the question of whether the bankruptcy court had jurisdiction to order and approve the sale" where, as here, an appeal is dismissed pursuant to section 363(m). *In re Gilchrist*, 891 F.2d 559, 561 (5th Cir. 1990) (citing *In re Sax*, 796 F.2d 994, 998 (7th Cir. 1986), *overruled on other grounds by Trinity 83 Dev., LLC v. ColFin Midwest Funding, LLC*, 917 F.3d 599 (7th Cir. 2019)). Su "forfeited the opportunity to contest jurisdiction" which is "fatal to his position, regardless of whether there was jurisdiction." *Id.*

We AFFIRM the ruling of the district court.