In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 22-1653
DAVID M. GILL, et al.,
 Plaintiffs-Appellants,
 v.

IAN K. LINNABARY, et al.,
 Defendants-Appellees.
 ____________________

 Appeal from the United States District Court for the
 Central District of Illinois.
 No. 3:16-cv-03221-SLD-EIL — Sara Darrow, Chief Judge.
 ____________________

 ARGUED DECEMBER 5, 2022 — DECIDED MARCH 22, 2023
 ____________________

 Before BRENNAN, SCUDDER, and ST. EVE, Circuit Judges.
 BRENNAN, Circuit Judge. In 2016, David Gill ran as an inde-
pendent candidate for the U.S. House of Representatives in
Illinois’s 13th Congressional District. He came up 2,000 signa-
tures short of qualifying for the general election ballot. Gill
then sued members of the Illinois State Board of Elections,
claiming that portions of the Illinois Election Code violated
the U.S. Constitution.
2 No. 22-1653

 The district court granted summary judgment to the de-
fendants, and Gill appealed. We reviewed that decision in Gill
v. Scholz, 962 F.3d 360 (7th Cir. 2020), and remanded with in-
structions to evaluate the ballot access provisions for inde-
pendent candidates under the fact-intensive balancing test set
forth in Anderson v. Celebrezze, 460 U.S. 780 (1983), and Burdick
v. Takushi, 504 U.S. 428 (1992). The district court did so and
again granted the defendants summary judgment, which Gill
now appeals.
 While this litigation was pending, Illinois adopted a redis-
tricting plan that changed the boundaries of the 13th District.
Because that district’s geographic features have changed, this
court can no longer offer Gill any effectual relief. Any declar-
atory or injunctive relief would speak to a congressional
district that no longer exists, and Gill’s circumstances are not
capable of repetition yet evading review. We therefore dis-
miss Gill’s as-applied challenge as moot.
 I
 The Illinois Election Code sets forth certain nomination re-
quirements for independent candidates to appear on the gen-
eral election ballot. An independent candidate must obtain
the petition signatures of “not less than 5%” of “the number
of persons who voted at the next preceding regular election”
within a 90-day window. 1 10 ILL. COMP. STAT. 5/10-3, 5/10-4.
In addition, a petition circulator must certify before a notary
public that, to the best of the circulator’s knowledge, the sig-
natures on each page are genuine and were signed in the cir-
culator’s presence by individuals registered to vote in the

 1 In the first election following redistricting, independent candidates

are required to obtain 5,000 signatures. 10 ILL. COMP. STAT. 5/10-3.
No. 22-1653 3

district. 10 ILL. COMP. STAT. 5/10-4. Unchallenged signatures
are presumed valid. 10 ILL. COMP. STAT. 5/10-8.
 Gill decided to run as an independent candidate in Illi-
nois’s 13th Congressional District in the 2016 election. Under
the 5% requirement, he needed to collect a minimum of 10,754
signatures to qualify for the general election ballot. With the
help of other circulators, Gill collected and filed 11,348 peti-
tion signatures with the Board. His submission was chal-
lenged, and after review the Board found 8,491 signatures
valid. Because the number of valid signatures submitted fell
below the number required, the Board decided that Gill
would not appear on the November 2016 general election bal-
lot.
 In August 2016, Gill, along with several of his supporters
registered to vote in the district, sued the members of the
Board under 42 U.S.C. § 1983. The suit challenged the state’s
petitioning requirements for independent candidates. Gill ar-
gued that the notarization requirement and the 5% require-
ment each standing alone violate the First and Fourteenth
Amendments of the U.S. Constitution. He also challenged the
constitutionality of the notarization requirement, the 5%
requirement, and the 90-day window in combination and as
applied to the 13th Congressional District. Gill sought both
declaratory and injunctive relief.
 The district court granted summary judgment in favor of
the Board members, concluding that this court’s decision in
Tripp v. Scholz, 872 F.3d 857 (7th Cir. 2017), controlled. In
Tripp, this court had held that the same provisions of the Illi-
nois Election Code—standing alone and in combination—did
not violate the constitutional rights of two Green Party candi-
dates running for the Illinois House of Representatives. Id. at
4 No. 22-1653

870. The district court here had not addressed the specific
characteristics of the 13th Congressional District, which dif-
fered from the state house districts in Tripp. Gill, 962 F.3d at
365. We therefore reversed the district court’s decision and re-
manded with instructions to perform “the fact-intensive anal-
ysis required by the Anderson-Burdick balancing test.” Id. at
366.
 On remand, the parties renewed their motions for sum-
mary judgment. After the parties completed briefing but be-
fore the district court ruled, the 2020 decennial census
resulted in Illinois enacting a new congressional map. This re-
districting substantially altered the boundaries of the 13th
Congressional District. 10 ILL. COMP. STAT. 78/10.
 The district court then applied the Anderson-Burdick bal-
ancing test and concluded that the notarization requirement,
the 5% requirement, and those requirements in combination
with the 90-day window and the geographic characteristics of
the 13th Congressional district did not violate the First and
Fourteenth Amendments. So, the court granted the defend-
ants’ motion and denied the plaintiffs’ motion.
 Gill appeals. 2 We review “a district court’s grant of sum-
mary judgment de novo. … Where, as here, both parties filed
cross-motions for summary judgment, all reasonable infer-
ences are drawn in favor of the party against whom the mo-
tion was granted.” Gill, 962 F.3d at 363.

 2 This case’s caption has been modified to reflect changes in the mem-

bership of the Board.
No. 22-1653 5

 II
 On appeal, Gill narrows his previous constitutional chal-
lenge. He alleges that the cumulative burden of the provisions
he contests, in combination and as applied to the 13th District,
violates the First and Fourteenth Amendments. He requests a
declaratory judgment and an injunction prohibiting the
Board’s enforcement of the contested provisions. 3 The Board
responds that the 2020 redistricting, which changed the
boundaries of the 13th District, rendered Gill’s appeal moot.
Gill replies that his claim falls within the “capable of repeti-
tion yet evading review” exception to the mootness doctrine.
 We first address our jurisdiction over Gill’s remaining
claim. Article III grants federal courts jurisdiction over
“[c]ases” and “[c]ontroversies.” U.S. CONST. art. III, § 2. “An
actual controversy must exist at every phase of litigation.”
Hero v. Lake Cnty. Election Bd., 42 F.4th 768, 772 (7th Cir. 2022).
“Mootness is a constitutional doctrine designed to avoid the
issuance of advisory opinions.” Trinity 83 Dev., LLC v. ColFin
Midwest Funding, LLC, 917 F.3d 599, 601 (7th Cir. 2019). A
claim becomes moot “when it is impossible for a court to grant
any effectual relief.” Watkins v. United States Dist. Ct. for the
Cent. Dist. of Illinois, 37 F.4th 453, 457 (7th Cir. 2022) (quoting
Chafin v. Chafin, 568 U.S. 165, 172 (2013)). “If this occurs, fed-
eral courts lose subject matter jurisdiction over the case.”
E.F.L. v. Prim, 986 F.3d 959, 962 (7th Cir. 2021).
 In support of their mootness claim, the defendants cite
several cases where redistricting mooted an election

 3 Gill’s request that the court compel the Board to place his name on

the 2016 general election ballot “is obviously moot.” Acevedo v. Cook Cnty.
Officers Electoral Bd., 925 F.3d 944, 948 n.1 (7th Cir. 2019).
6 No. 22-1653

challenge. See Growe v. Emison, 507 U.S. 25, 39 (1993); Davis v.
Abbott, 781 F.3d 207, 215 (5th Cir. 2015); Larios v. Perdue, 306 F.
Supp. 2d 1190, 1201 (N.D. Ga. 2003); Johnson v. Mortham, 926
F. Supp. 1460, 1469–70 (N.D. Fla. 1996). The issuance of new
maps, with different district lines, meant that challenges un-
der the Voting Rights Act were “no longer cognizable.”
Mortham, 926 F. Supp. at 1470. But as Gill points out, the cases
the defendants cite deal with vote-dilution claims or the pre-
clearance of redistricting maps under the Voting Rights Act.
 A claim is not moot if it is capable of repetition yet evading
review. See Federal Election Comm’n v. Wisconsin Right to Life,
Inc., 551 U.S. 449, 462 (2007). This exception applies when
“(1) the challenged action is in its duration too short to be
fully litigated prior to cessation or expiration, and (2) there is
a reasonable expectation that the same complaining party will
be subject to the same action again.” Id. (quoting Spencer v.
Kemna, 523 U.S. 1, 17 (1998)). “These requirements are often
met in ballot-access cases,” Acevedo, 925 F.3d at 947, because
“[e]lections often happen too quickly for meaningful judicial
review to occur before a dispute is resolved.” Hero, 42 F.4th at
773.
 In election cases, the capable of repetition yet evading re-
view exception remains “appropriate when there are ‘as ap-
plied’ challenges as well as in the more typical case involving
only facial attacks.” Storer v. Brown, 415 U.S. 724, 737 n.8
(1974). In Wisconsin Right to Life, the Supreme Court held that
an as-applied challenge to the Federal Election Commission’s
blackout period for political and issue advertisements “fit
comfortably within the established exception to mootness for
disputes capable of repetition, yet evading review.” 551 U.S.
at 462. The Court rejected the defendant’s argument that the
No. 22-1653 7

plaintiffs needed to show any future advertisements would
share all the characteristics of the previous ones to satisfy the
exception’s second prong. See id. “Requiring repetition of
every ‘legally relevant’ characteristic of an as-applied chal-
lenge—down to the last detail—would effectively … [make]
this exception unavailable for virtually all as-applied chal-
lenges.” Id. Because Wisconsin Right to Life “credibly claimed
that it planned on running ‘materially similar’ future targeted
broadcast ads,” the Court held that there existed a reasonable
expectation that the same controversy would recur. Id. at 463–
64.
 In the previous appeal, we ruled—notwithstanding that
the 2016 election had passed—that this case presented a justi-
ciable controversy. Gill, 962 F.3d at 363 n.3. Both requirements
of the capable of repetition yet evading review exception to
mootness were satisfied because “Gill was unable to litigate
his claims before the November 2016 election was held, and
he has expressed his intent to run for office in 2020.” Id. On
remand, the district court agreed with our decision for the
same reasons. Gill says he again falls within this exception,
citing several ballot-access cases. But those cases do not ad-
dress how redistricting could impact the mootness of such a
claim or the application of the exception. See Acevedo, 925 F.3d
at 948 n.1; Krislov, v. Rednour, 226 F.3d 851, 858 (7th Cir. 2000).
 Gill has stated his intent to run for Congress as an inde-
pendent candidate in future Illinois elections. The Illinois
Election Code provisions that Gill challenges remain in effect.
And the time span between the Board denying Gill ballot ac-
cess and the November 2016 general election—approximately
three and one-half months—was too short a period to litigate
this controversy. By these measures, Gill could “again be
8 No. 22-1653

subjected to the alleged illegality.” Wisconsin Right to Life, 551
U.S. at 463. Should he run for office in the future, he would
have to abide by the notarization and 5% requirements as well
as collect signatures within a 90-day window.
 But this appeal presents a critical difference. Gill brings an
as-applied challenge to these Illinois election provisions for a
district that, due to the 2020 redistricting, no longer exists. The
district’s characteristics have changed due to redistricting. On
one hand, the features of the 13th District may be “legally rel-
evant” to Gill’s as-applied challenge and under Wisconsin
Right to Life need not be identical to fall within the mootness
exception. If Gill had found himself running for Congress in
a district of approximately similar geographic size, popula-
tion density, and distribution of municipalities, then there
may have been a reasonable expectation that the “same con-
troversy involving the same party will recur.” Id. at 464.
 Yet we remanded this case because the district court did
not consider the specific factual and geographical features of
the 13th District when it analyzed the severity of the burden
placed on Gill by the challenged provisions of the Illinois
Election Code. See Anderson, 460 U.S. at 789; Burdick, 504 U.S.
at 434. We stated, “the burden the 5% signature requirement
imposes on candidates (and possibly the interests Illinois pos-
sesses in regulating those candidates) varies between elec-
tions and between districts,” and “[i]t is precisely these sorts
of factual differences that the Supreme Court has stated must
be considered by district courts when applying the Anderson-
Burdick balancing test.” Gill, 962 F.3d at 365–66.
 Gill emphasizes the relevance of the 13th District’s specific
geographic features throughout his arguments. He contends
the challenged requirements in combination with the splitting
No. 22-1653 9

of population centers in his large, rural district create a severe
burden on his candidacy. For Gill, the division of cities and
counties and the “lack of population density” within the dis-
trict “created confusion, errors, and impediments to collecting
signatures and substantial loss of signature gathering oppor-
tunities at public events.” The “rural” and “geographically
large” nature of the 13th District also made collecting signa-
tures by going door-to-door not “practical or feasible.” Gill
contends the district court erred by not engaging with these
features of the district, which he argues place an unconstitu-
tional burden on independent candidates. Crucially, Gill of-
fers these arguments about the district as it existed in 2016.
 The specific geography of the 13th District is important to
the fact-based evaluation of Gill’s claim. Since Illinois’s 2020
redistricting, the district boundaries have changed signifi-
cantly as shown when contrasting the 13th District map be-
fore and after redistricting. The district appears smaller. Its
shape and the population centers within it have changed con-
siderably. The district no longer includes certain metropolitan
areas and contains new ones. In 2016, the district included the
cities of Decatur, Urbana, and Champaign, while stretching
north to cover portions of the cities of Springfield, Blooming-
ton, and Normal. Now the district no longer runs north to
Normal and Bloomington, and it contains only a portion of
Decatur. Instead, it runs further south to include East St. Louis
and most of its densely populated metro region.
 In Gill’s as-applied challenge, the constitutionality of the
challenged provisions necessarily depends on the district’s
characteristics, such as its geography and its rural versus ur-
ban demographics. But because of redistricting, that has
changed. In any future election, Gill will not have to abide by
10 No. 22-1653

the challenged provisions in the 2016 version of the district.
As a result of these changes to the district’s boundary lines,
federal courts can no longer provide him any effectual relief.
Any declaration as to the constitutionality of the challenged
provisions would speak to a district that no longer exists. And
any injunctive relief would keep the Board from enforcing the
challenged provisions in a district that no longer exists. Ac-
cordingly, there is no reasonable expectation that Gill “will be
subject to the same action again.” Wisconsin Right to Life, 551
U.S. at 462. In an as-applied challenge, the specifics of the dis-
trict are important. The 2020 redistricting mooted Gill’s ap-
peal.
 Now, not all election challenges following a decennial re-
districting will be moot. See, e.g., Lux v. Judd, 651 F.3d 396, 401
(4th Cir. 2011) (holding that redistricting did not moot a chal-
lenge to a residency requirement because the defendant “will
be adversely affected by the residency requirement in future
elections whether or not he lives in the Seventh District”).
Time can pass quickly, and Supreme Court case law often rec-
ognizes that the mootness doctrine may be somewhat looser
in election law cases. But here, the different characteristics of
the district are a result of more than just the passage of time.
An intervening redistricting has refuted the arguments Gill
makes about the burden caused by the challenged provisions.
 Changes to the 13th Congressional District because of re-
districting have moved this case outside of the capable of rep-
etition yet evading review exception to the mootness doctrine.
This case is thus moot and not justiciable. We need not review,
therefore, the district court’s application of the Anderson-Bur-
dick test. For these reasons, we VACATE and REMAND with in-
struction to dismiss this case as moot.